# EXHIBIT I

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of New Jersey

| | |
|---|---|
| **United States of America, et al.**<br>*Plaintiff*<br>v.<br>**Apple Inc.**<br>*Defendant* | Civil Action No. **2:24-cv-04055 (JXN-LDW)** |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: **Meta Platforms, Inc., 1 Meta Way Menlo Park CA, 94025**

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: **See Schedule A (attached)**

| Place: **Debevoise & Plimpton LLP**<br>**650 California St.**<br>**San Francisco CA 94108 (or electronically)** | Date and Time:<br>**07/16/2025 11:59p.m. ET** |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: **06/16/2025**

*CLERK OF COURT*

_______________________ OR [signature]

*Signature of Clerk or Deputy Clerk* — *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* **Apple Inc.**, who issues or requests this subpoena, are:

**Steven Tegrar, Debevoise & Plimpton LLP, 66 Hudson Blvd., New York, NY 10001, sjtegrar@debevoise.com, (212) 909-6000**

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No. **2:24-cv-04055 (JXN-LDW)**

## PROOF OF SERVICE

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)***

I received this subpoena for *(name of individual and title, if any)* ______________________________

on *(date)* ______________ .

❒ I served the subpoena by delivering a copy to the named person as follows: ______________________________

____________________________________________ on *(date)* ______________ ; or

❒ I returned the subpoena unexecuted because: ______________________________

______________________________________________________________ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ ______________ .

My fees are $ ______________ for travel and $ ______________ for services, for a total of $ **0.00** .

I declare under penalty of perjury that this information is true.

Date: ______________

______________________________
*Server's signature*

______________________________
*Printed name and title*

______________________________
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** ***For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person

**(i)** is a party or a party's officer; or

**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** ***For Other Discovery.*** A subpoena may command:

**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** ***Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** ***Command to Produce Materials or Permit Inspection.***

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** ***Quashing or Modifying a Subpoena.***

**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** ***Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** ***Claiming Privilege or Protection.***

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**

The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**SCHEDULE A**

**DEFINITIONS**

Unless otherwise defined, all words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common, ordinary sense. As used in the below requests for production of documents ("Requests") and the Definitions and Instructions, the words set forth below shall be defined as follows:

1. "Alleged Conduct" shall mean all (and any component of) the conduct alleged to be unlawful in the Complaints, including any alleged monopolization or attempted monopolization by Apple of the Alleged Markets. Alleged Conduct includes but is not limited to:

   a. Any alleged restrictions that Apple has placed on third-party developers' ability to offer Apps for download in the Apple App Store or in any other App Marketplace;

   b. Any alleged restrictions Apple has placed on third-party developers' access to iPhone features and development tools, including APIs and SDKs;

   c. Any alleged restrictions Apple has placed on third-party access to Apple's In-App Purchase or alternatives to In-App Purchase;

   d. Any alleged restrictions Apple has placed on products, services, Apps, or technology that allegedly facilitate users' ability to switch between the iPhone and non-Apple Smartphones, or vice versa, including those described in the Complaints as middleware;

   e. Any alleged restrictions Apple has placed on interoperability concerning Smartphones or policies or practices that allegedly make it harder for consumers to switch between competing Smartphones; and

f. Any alleged restrictions Apple has placed on Super Apps, Cloud Streaming Apps, Messaging Apps, Wearables, and Digital Wallets.

2. "Alleged Markets" shall mean the product markets alleged in the Complaints, including the "Alleged Smartphone Market," the "Alleged Performance Smartphone Market," and any other product markets alleged in the DOJ Complaint or any of the MDL Complaints. The "Alleged Smartphone Market" shall be defined as Smartphone Market is defined in the Complaints, including without limitation in Paragraphs 172 through 179 of the DOJ Complaint. The "Alleged Performance Smartphone Market" shall be defined as Performance Smartphone Market is defined in the Complaints, including without limitation in Paragraphs 165 through 171 and 176 through 179 of the DOJ Complaint.

3. "API" shall mean an application programming interface and shall be defined as in the Complaints, including without limitation Paragraphs 158 through 163 of the DOJ Complaint.

4. "Apple" shall mean Apple Inc. and its predecessors, wholly owned or controlled subsidiaries or affiliates, successors, parents, departments, divisions, and any organization or entity managed or controlled by Apple Inc.

5. "App" or "Application" shall be defined as in the Complaints, including in Paragraphs 158 through 163 of the DOJ Complaint.

6. "App Marketplace" shall mean any online storefront where Apps are offered for download or purchase, including the Apple App Store, Amazon Appstore, Amazon Underground, Android Market, Aptoide, Blackberry World, Chrome Web Store, Epic Games Store, Facebook App Center, GetJar, Google Play Store, Meta Horizon Store, Microsoft Store, Origin, Samsung Galaxy Store, Steam, Windows Phone Store, Altstore, TutuApp, and online storefronts distributing games and digital content for Xbox, PlayStation, and Nintendo.

7. "App Review" shall mean Apple's or any other Person's processes of reviewing Apps or App updates for potential inclusion on App Marketplaces.

8. "Business" shall be defined as all actual or potential operations, services, products, technologies, activities, and business opportunities conducted or pursued by or on behalf of Meta Platforms, Inc. (and formerly Facebook, Inc.), including but not limited to: the development, deployment, and operation of social media platforms and services, including Facebook, Instagram, Threads, Messenger, and WhatsApp; the development and use of artificial intelligence and machine learning technologies, including but not limited to large language models, recommendation algorithms, and content moderation systems; activities of Meta AI and Reality Labs, including work on virtual/augmented reality and the Metaverse; data collection, processing, and monetization involving users or third parties; and all affiliated entities, subsidiaries, and contractors acting on Meta's behalf.

9. "Cloud Streaming App" shall be defined as in the Complaints, including in Paragraphs 10 and 71 through 79 of the DOJ Complaint.

10. "Communication" shall mean any exchange or transmission of words or ideas to another Person or entity, whether accomplished Person to Person, by telephone, in writing, via electronic mail or text message (including via Workchat and Workplace), via social media, or through any other medium, and shall include discussions, conversations, negotiations, conferences, meetings, speeches, memoranda, letters, correspondence, notes, blogs, postings, statements, and questions.

11. "Complaints" shall mean the DOJ Complaint and any MDL Complaint.

12. "Digital Wallet" shall be defined as in the Complaints, including in Paragraphs 10 and 104 through 118 of the DOJ Complaint.

13. “Document” shall have the full meaning ascribed to it under Rule 34 and Rule 45 of the Federal Rules of Civil Procedure and shall include Communications; memoranda; records; Reports; books, records, and summaries of personal conversations or interviews; diaries; presentations; slide decks; graphs; charts; spreadsheets; diagrams; tables; photographs; recordings; tapes; microfilms; minutes; records and summaries of meetings or conferences; press releases; blog posts; stenographic, handwritten or any other notes; work papers; checks, front and back; check vouchers, check stubs, or receipts; tape data sheets or data processing cards or discs; any other written, recorded, transcribed, punched, taped, filmed, or graphic matter, however produced or reproduced; and any paper or writing of whatever description, including information contained in any computer although not yet printed out. The term “Document” further includes all copies where the copy is not identical to the original.

14. “DOJ Complaint” shall mean the First Amended Complaint or any future amended complaints against Apple filed by the United States Department of Justice, several states, and the District of Columbia in the United States District Court for the District of New Jersey on June 11, 2024 (Case No. 2:24-cv-04055, Dkt. No. 51), which is attached hereto as Exhibit A.

15. “Facebook Gaming” or “Instant Games” shall mean the standalone gaming app launched in the U.S. in 2020 and discontinued in the U.S. in 2022.

16. “Facebook Mobile” shall mean the Facebook mobile app for Smartphones.

17. “In-App Purchase” shall mean the purchase of a product, feature, service, or functionality for a fee that occurs within an App.

18. “Including,” “included,” “includes,” and “include” shall not be construed as limiting any Request, and shall mean the same as “including, but not limited to.”

19. "MDL Complaint" shall mean any consolidated complaints in any actions coordinated as part of *In re Apple Inc. Smartphone Antitrust Litigation*, No. 24-MD-3113 (D.N.J.).

20. "Messaging App" shall be defined as in the Complaints, including in Paragraphs 10 and 80 through 93 of the DOJ Complaint, and shall include without limitation Beeper, BlueChat, Discord, Facebook Messenger, Google Messages, Skype, Microsoft Messaging, Signal, Slack, Snapchat, Teams, Telegram, Texts, Viber, WhatsApp, and Apple's Messages App.

21. "Meta," "You," and "Your" shall mean Meta Platforms, Inc., as well as Meta's predecessors, successors, subsidiaries, including Facebook Inc., WhatsApp, Instagram, and Oculus VR, and each of their predecessors, successors, and subsidiaries; and departments and divisions of Meta.

22. The "Meta Horizon Store" shall mean the App Marketplace known by that name, formerly known as the Meta Quest Store or the Oculus Store.

23. "Mini-Program" shall be defined as in the Complaints, including in Paragraphs 60 through 70 of the DOJ Complaint.

24. "Multimedia Messaging Service" or "MMS" shall be defined as in the Complaints, including in Paragraph 83 and Footnote 1 of the DOJ Complaint.

25. "OTT" shall be defined as in the Complaints, including in Paragraph 84 of the DOJ Complaint.

26. "Performance Smartphone" shall be defined as in the Complaints, including in Paragraphs 165 through 171 of the DOJ Complaint.

27. "Person" shall mean any natural individual, partnership, corporation, company, association, organization, joint venture, government, agency, or entity.

28. “Report” shall mean any reports, research, papers, memoranda, presentations, reviews, statistical compilations, or other analyses.

29. “Rich Communication Services” or “RCS” shall be defined as in the Complaints, including in Paragraph 89 of the DOJ Complaint.

30. “SDK” shall mean Apple’s Software Development Kit.

31. “Short Message Service” or “SMS” shall be defined as in the Complaints, including in Paragraphs 45 and 82 through 83 of the DOJ Complaint.

32. “Smartphone” shall be defined as in the Complaints, including in Paragraphs 148 through 163 of the DOJ Complaint.

33. “Super App” shall be defined as in the Complaints, including in Paragraphs 10 and 60 through 70 of the DOJ Complaint.

34. “Wearables” shall be defined as in the Complaints, including in Paragraphs 10 and 94 through 103 of the DOJ Complaint, and shall include any “Smartwatch” as that term is defined in the Complaints, including in Paragraphs 10 and 94 through 103 of the DOJ Complaint, as well as any version or predecessor of Your Meta Quest headset and Your Meta Ray-Ban smart glasses.

35. The connectives “and” and “or” shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Requests all Documents, Communications, materials, or responses that might otherwise be construed to be outside of its scope.

36. The terms “any,” “each,” and “all” are mutually interchangeable and are meant to encompass each other.

37. The terms “concerning,” “reflecting,” “regarding,” and “related to” mean in whole or in part, concerning, reflecting, regarding, related to, relating to, in connection with, involving,

supporting, addressing, analyzing, constituting, containing, commenting on, discussing, describing, identifying, referring to, reporting on, stating, dealing with, or in any way pertaining or bearing a logical connection to.

38. The use of the singular form of any word includes the plural and vice versa as necessary to bring within the scope of the Request all responses that might otherwise be construed to be outside of its scope.

39. The use of the feminine form of any word includes the masculine form and vice versa as necessary to bring within the scope of the Request all responses that might otherwise be construed to be outside of its scope.

40. The past tense shall be construed to include the present tense and vice versa as necessary to bring within the scope of the Request all responses that might otherwise be construed to be outside of its scope.

## INSTRUCTIONS

1. All Documents and Communications should be produced in electronic form in accordance with the Electronically Stored Information ("ESI") Protocol attached hereto as Exhibit B.

2. For purposes of interpreting or construing the scope of these Requests, the terms used shall be given the most expansive and inclusive interpretation, unless specifically limited in the Request.

3. All Documents and Communications requested herein must be produced in their entirety, with all attachments and enclosures.

4. In responding to these Requests, You shall produce all Documents and Communications in Your possession, custody, or control, and all Documents and Communications reasonably available to You, including those in the possession, custody, or control of any Person acting on Your behalf.

5. These Requests shall not be deemed to call for identical hash duplicates (e.g., MD5, SHA 256, or other industry standard) of Documents and Communications. "Identical" means precisely the same in all respects; for example, a Document or Communication with handwritten notes or editing marks shall not be deemed identical to one without such notes or marks. Additionally, for Documents or Communications with attachments, the hash value shall be generated based on the parent/child document grouping. Otherwise identical Documents or Communications with unique family members are not identical, and both must be produced. You shall produce as a separate Document or Communication any Document or Communication that contains any notation, addition, insertion, or marking of any kind that renders it not entirely identical to a version of that Document or Communication without such marks.

6. If there are no Documents or Communications responsive to a category in these Requests, You shall so state in writing.

7. If You object to a portion of any Request, You shall state the legal and factual basis for Your objection with specificity and respond to all parts of the Request to which You do not object.

8. If You encounter any ambiguity in the Requests, in a definition, or in an instruction relevant to the Requests, explain what You find to be ambiguous and what construction You used in providing Your response. If You contend that You do not understand the definition of any term or phrase used in a Request, You shall explain in detail what it is that You do not understand about the term or phrase at issue, and You shall respond to that part of the Request that You do understand.

9. If You object to any Request on the grounds that responding is unduly burdensome, describe the undue burden.

10. If You contend that any part of a Request is overbroad, You shall explain in detail why it is that You consider that part of the Request to be overbroad, and You shall produce Documents and Communications in response to the remainder of the Request that You do not consider to be overbroad.

11. In producing Documents and Communications responsive to these Requests, You must Bates stamp them in a manner that clearly identifies that each such Document or Communication has been produced by You.

12. If any requested Document or Communication is withheld on the basis of any claim of privilege, You must set forth the information necessary for Apple to ascertain whether the

privilege properly applies, including all information identified in Paragraph VI of the ESI Protocol attached hereto as Exhibit B.

13. All productions shall be governed, as applicable, by the Discovery Confidentiality Order attached hereto as Exhibit C.

14. If any portion of any Document or Communication responsive to these Requests is withheld under claim of privilege, all non-privileged portions must be produced with the portion(s) claimed to be privileged redacted and logged in a privilege log pursuant to the preceding instructions.

15. In searching for and producing Documents and Communications responsive to these Requests, You shall use a reasonable time period to be agreed upon with Apple in advance of productions.

16. Specified date ranges are inclusive. Unless otherwise stated, a year includes all days of that year from and including January 1 to and including December 31.

17. To the extent required by the Federal Rules of Civil Procedure and applicable case law, these Requests are continuing and require further and supplemental production if additional Documents or Communications are received, generated, or discovered after the time of the original production. If after responding to these Requests, You obtain or become aware of any additional Documents or Communications that are directly or indirectly responsive to any part of any of these Requests, You shall promptly produce any additional responsive Documents or Communications.

18. Apple serves these Requests without prejudice to its right to serve additional requests for production of Documents and Communications or other requests or subpoenas.

**REQUESTS FOR PRODUCTION OF DOCUMENTS**

**REQUEST FOR PRODUCTION NO. 1:** All Documents and Communications concerning the Alleged Conduct or the Alleged Markets, including: (a) the existence of such markets or any submarkets within such markets, including any industry or public recognition of such markets and any distinct customers or prices within such markets; (b) any market shares within such markets or submarkets; or (c) any analyses concerning competition between or within such markets or submarkets.

**REQUEST FOR PRODUCTION NO. 2:** All Documents and Communications provided to or reviewed by Your board of directors concerning the Alleged Conduct, the Alleged Markets, or Your efforts to compete with Apple or any other Smartphone manufacturer in the Alleged Markets.

**REQUEST FOR PRODUCTION NO. 3:** Documents sufficient to identify: (a) any sector, industry, market, submarket, or business line in which You compete or have competed with Apple related to the Alleged Conduct; (b) any other participants in such sectors, industries, markets, or business lines along with their respective market shares over time; (c) any industry or public recognition of such markets; (d) any distinct customers within such markets; (e) any distinct prices or pricing trends in such markets; and (f) any analyses of competition within such sectors, industries, markets, or business lines, such as analyses of supply or demand conditions.

**REQUEST FOR PRODUCTION NO. 4:** Documents sufficient to identify any Super Apps, Cloud Streaming Apps, Messaging Apps, Apps concerning Wearables, or Digital Wallets that You have submitted to any App Marketplace for Smartphones, including any updates to such Apps, as well as the features or functions of each such App or App update and the APIs, features, entitlements, or development tools that You used or sought to use for each such App or App update.

**REQUEST FOR PRODUCTION NO. 5:** Documents sufficient to show any of Your efforts to access any of Apple's APIs, features, functionalities, entitlements, or development tools, including Documents and Communications concerning any assistance You requested from Apple in facilitating such access or any features or functions that You requested that Apple develop for Your use.

**REQUEST FOR PRODUCTION NO. 6:** All Communications with any Smartphone manufacturer, operating system provider, or App Marketplace concerning approval or review of any of Your Apps or App updates in the areas of Super Apps, Cloud Streaming Apps, Messaging Apps, Apps concerning Wearables, and Digital Wallets, and all Documents related to any such Communications.

**REQUEST FOR PRODUCTION NO. 7:** Documents sufficient to show (by operating system, App Marketplace, country, and time) download and use rates for Your Apps in the areas of Your Super Apps, Cloud Streaming Apps, Messaging Apps, Wearables, and Digital Wallets.

**REQUEST FOR PRODUCTION NO. 8:** For each of Your Super Apps, Cloud Streaming Apps, Messaging Apps, Apps concerning Your Wearables, or Digital Wallets, including Your Facebook Mobile, Facebook Gaming, Instagram, WhatsApp, Facebook Messenger Apps, and any Apps connecting Smartphones to any version or predecessor of Your Meta Quest headsets, Documents sufficient to show (by operating system, App identity, App Marketplace, country, and time): (a) the identity of each App Marketplace on which the App is available and (b) user complaints concerning the functionality or features offered—or not offered—on the App.

**REQUEST FOR PRODUCTION NO. 9:** All Documents and Communications relating to any efforts by You to submit to any App Marketplace for Smartphones any Super Apps (including Facebook Mobile), Cloud Streaming Apps (including Facebook Gaming), Messaging Apps (including Messenger, WhatsApp, and Instagram), Apps concerning Wearables, or Digital Wallets, or any updates to such Apps, including: (a) the APIs, features, entitlements, or development tools that You used or sought to use for each App or App update; (b) Communications with any Smartphone manufacturer, operating system provider, or App Marketplace concerning approval or review, including any representations regarding user data collection, user or system security, targeting of minors, or objectionable content; (c) Documents concerning negotiations on any actual or threatened removal of any of Your Apps from the Apple App Store; (d) Documents concerning any rejected submission of any of Your Apps to the Apple App Store and Your efforts to bring Your Apps into compliance and/or resubmit the App to Apple; (e) privacy and security analyses of Your submitted Apps; (f) profit projections for Your submitted Apps; (g) marketing or other strategic plans for Your submitted Apps; and (h) comparisons of Your native submitted Apps to Your web-based versions, if any.

**REQUEST FOR PRODUCTION NO. 10:** All Documents and Communications concerning any Apple practices or policies that You contend have adversely impacted Your Apps or Your Business.

**REQUEST FOR PRODUCTION NO. 11:** All Documents concerning Your Communications, meetings, or interactions with any government agency or division (whether federal, state, local, or foreign) or with any private plaintiff (or representative thereof) in any actions coordinated as part of: (a) *In re Apple Inc. Smartphone Antitrust Litigation*, No. 24-MD-3113 (D.N.J.) or (b) any other lawsuits against or concerning Apple; the Alleged Conduct; or the Alleged Markets. Such Documents should include (i) any Documents or Communications exchanged between You and any such Person; (ii) any Documents You relied on or otherwise used in connection with such Communications; (iii) any agendas or materials prepared for any meetings, discussions, or interactions with any such Person; or (iv) any summaries, transcripts, notes, or other accounts of such meetings, discussions, or interactions.

**REQUEST FOR PRODUCTION NO. 12:** All Documents and Communications showing any value or benefits, including in terms of security, privacy, ease of use, distribution, marketing, or ability to innovate, that iPhone, the Apple App Store, App Review, or Apple have provided for Your Apps or Your Business, including any quantification of any such benefits or the costs that You would incur in the absence of such benefits.

**REQUEST FOR PRODUCTION NO. 13:** All Documents and Communications reflecting any comparison or analysis of the relative benefits or drawbacks of Apple products and services as compared to the products and services offered by other companies, including benefits or drawbacks related to privacy and security, user experience, effects on competition, or the performance or features of Your Apps or services.

**REQUEST FOR PRODUCTION NO. 14:** All Documents and Communications concerning any requests and responses thereto that You have made to any App Marketplace regarding changes to or exemptions from any guidelines, rules, or decisions with respect to the App Marketplace, including any proposals You have made for any guidelines that any App Marketplace should adopt.

**REQUEST FOR PRODUCTION NO. 15:** Documents sufficient to show Your policies and procedures concerning Your selection or use of Smartphones for Your officers and employees, including Your policies and procedures applicable to which Smartphones are permitted and how they may be used, and Your policies and procedures for Bring Your Own Devices ("BYOD") and how they may be used.

**REQUEST FOR PRODUCTION NO. 16:** All Documents and Communications regarding any evaluations of the relative benefits and risks associated with different Smartphones and App Marketplaces, Smartphone privacy and security features, and policies governing the downloading of Apps or software to the BYOD device, including any policies or procedures concerning the manner in which employees may download Apps or software to the device.

**REQUEST FOR PRODUCTION NO. 17:** Documents sufficient to show (by operating system, App identity, App Marketplace, country, and time on a monthly basis) the financial performance of each of Your Super Apps, Cloud Streaming Apps, Messaging Apps, Apps concerning Wearables, or Digital Wallets, including: (a) the identity of each App Marketplace on which the App is available; (b) financial statements on an annual and quarterly basis reflecting the financial performance of the App; (c) the costs associated with the development of the App; (d) the costs associated with distribution of the App on each App Marketplace; (e) the revenue of the App on each App Marketplace; (f) the commission rate(s) paid on each App Marketplace; and (g)

the revenue and costs associated with direct distribution or other means of distribution outside any App Marketplace.

**REQUEST FOR PRODUCTION NO. 18:** All Documents and Communications concerning Your decisions, policies, practices, or efforts to obtain access to or use or not use or enable or disable any features, functionality, or APIs of Smartphones concerning Your Super Apps, Cloud Streaming Apps, Messaging Apps, Apps concerning Wearables, and Digital Wallets, including Your decision in 2023 to discontinue Apple Watch users' ability to respond to Messenger notifications.

**REQUEST FOR PRODUCTION NO. 19:** All Documents and Communications concerning Your decisions regarding whether to offer In-App Purchases for services on Your Super Apps, Cloud Streaming Apps, Messaging Apps, Apps concerning Wearables, and Digital Wallets, including: (a) Your analyses of the privacy and security impacts resulting from such decisions; (b) the financial impacts on You resulting from such decisions; (c) whether You have, had, or plan to have a similar policy for non-Apple App Marketplaces and the reasons for that decision; (d) whether users have the ability to use In-App Purchases on each platform on which the App is available (including iOS, Android OS, and non-mobile platforms) for redemption on another platform; (e) Communications with third parties regarding the financial, privacy, and security impacts resulting from such decisions; and (f) Documents concerning negotiations between You and any App Marketplace about the payment system offered in each App You distribute.

**REQUEST FOR PRODUCTION NO. 20:** All Documents and Communications concerning differences or comparisons (including with respect to consumer experience, privacy, security, safety, interoperability, and Your efforts to maintain privacy and security) between: (a)

Apple's iMessage service and Your Messaging Apps, including both features available on Your Messaging Apps that are not available on iMessage and features of iMessage that Your Messaging Apps are technologically incapable of developing; (b) Apple's App Store and Your App Marketplaces; and (c) Facebook Mobile's performance on the iPhone and Facebook Mobile's performance on other Smartphones and platforms.

**REQUEST FOR PRODUCTION NO. 21:** All Documents and Communications concerning differences or comparisons (including with respect to consumer experience, privacy, security, safety, interoperability, and Your efforts to maintain privacy and security) between Your Super Apps, Cloud Streaming Apps, Messaging Apps, Apps concerning Wearables, and Digital Wallets, when used on Apple's iOS versus when used on a non-Apple platform.

**REQUEST FOR PRODUCTION NO. 22:** Documents sufficient to identify, at any time, all differences in functionality of Your Apps or services depending on the device and App Marketplace used, including differences in functionality of Your Apps or services between iPhone and Android or between Smartphones and other devices, as well as the reasons for any such differences.

**REQUEST FOR PRODUCTION NO. 23:** All Documents and Communications concerning competition involving Your Apps in the areas of Super Apps, Cloud Streaming Apps, Messaging Apps, Wearables, and Digital Wallets offered on App Marketplaces, both globally and by country, including: (a) any analyses of market demand; (b) any analyses of market share in any market or submarket related to such competition; and (c) any analyses of the impact of Apple's or any other App Marketplace's App Review policies or procedures on such competition.

**REQUEST FOR PRODUCTION NO. 24:** Documents sufficient to show the strategy, consumer research, and consumer response to all advertising campaigns related to Your Messaging

Apps or Apple's Messaging Apps, including Your WhatsApp ads featuring a carrier pigeon and featuring the cast of *Modern Family*.

**REQUEST FOR PRODUCTION NO. 25:** All Documents and Communications, including consumer surveys, concerning the availability on Your Messaging Apps, including WhatsApp, of SMS, MMS, RCS, or OTT capabilities, encrypted messages, send later features, and features permitting Your Messaging Apps to continue operating in the background when closed, including Your interest or lack of interest in any efforts to develop such features for Your Messaging Apps on any App Marketplace, Your security and privacy concerns about such features, and Your evaluation of industry developments concerning SMS, MMS, RCS, or OTT.

**REQUEST FOR PRODUCTION NO. 26:** All Documents and Communications concerning Your past, present, and planned future encryption policies and practices on Your Messaging Apps, including: (a) whether You have the technical ability to remove encryption from messages or other content; (b) whether and in what circumstances You unencrypt messages or other content; (c) whether and in what circumstances You provide unencrypted messages or content to any third party; (d) encryption methods You use or have considered using; (e) Your evaluation of on-device encryption versus cloud-based encryption, including Your reasons for using on-device encryption versus cloud-based encryption or vice versa; and (f) the technological basis for representations about WhatsApp data privacy and security made by You in the "Not Even WhatsApp" advertising campaign, launched in May 2025, and in any related outreach or messaging, including on whatsapp.com, as relevant to Apple platforms, including iOS, iPadOS, macOS, and watchOS.

**REQUEST FOR PRODUCTION NO. 27:** All Documents and Communications concerning Your efforts to integrate messages sent and received on Apple's Messaging Apps into

Your Messaging Apps, including Facebook Messenger, WhatsApp, and Instagram, including: (a) whether and how such messages are encrypted; (b) any use of Mac or iPhone hardware identifiers in such efforts; (c) any use of iMessage servers and protocols, including Apple Push Notification Service, in such efforts; (d) any evaluation of whether such efforts are consistent with the Apple Developer Program License Agreement; (e) any Communications with Your employees or other third parties concerning such efforts; and (f) any evaluation of the impact on the security, functionality, and convenience of messages sent and received on Apple's Messaging Apps.

**REQUEST FOR PRODUCTION NO. 28:** All Documents and Communications concerning the actual, perceived, or potential relative benefits or drawbacks of native Cloud Streaming Apps as compared to web-based Cloud Streaming Apps, or as compared to Apps whose content is not primarily streamed, including in terms of privacy, security, consumer experience, ease of use, innovation, and market demand.

**REQUEST FOR PRODUCTION NO. 29:** Documents sufficient to show why You decided not to offer playable gaming content for Your Facebook Gaming App as offered on the Apple App Store and the impact on Your Business of that decision.

**REQUEST FOR PRODUCTION NO. 30:** Documents sufficient to show the reasons for Your decision to discontinue offering Your Facebook Gaming App, including: (a) any competitive or market share analyses; (b) any analyses of failures or shortcomings in Your Facebook Gaming App; (c) any consumer complaints or analyses of consumer complaints concerning Your Facebook Gaming App; and (d) any analyses of privacy or security issues concerning Your Facebook Gaming App.

**REQUEST FOR PRODUCTION NO. 31:** All Documents and Communications reflecting consumer data, survey results, or complaints relating to user privacy, user and system

security, exposure of users to objectionable content including content targeting minors, or potential fraud on any App offered by the Facebook App Center, Meta Horizon Store, and/or Your other Super Apps and App Marketplaces, other than those offered via the Apple App Store, including any consumer survey results or data indicating the value of user privacy, safety, and user and system security to users.

**REQUEST FOR PRODUCTION NO. 32:** All Documents and Communications concerning (a) internal and external assessments or analyses of user privacy and user and system security risks relating to Your Super Apps, Cloud Streaming Apps, Messaging Apps, Apps concerning Wearables, and Digital Wallets; and (b) any discussion or efforts by You regarding the application of a Smartphone manufacturer's or operating system provider's security and privacy principles including, but not limited to:

a. The finding from Your consumer research groups that "The idea that Facebook cares about people's privacy is not believable anywhere," as reported by former Director of Global Public Policy Sarah Wynn-Williams in CARELESS PEOPLE (2025);

b. The conduct described in https://www.washingtonpost.com/technology/2025/06/06/meta-privacy-facebook-instagram/, https://arstechnica.com/security/2025/06/meta-and-yandex-are-de-anonymizing-android-users-web-browsing-identifiers/; and https://localmess.github.io/, including but not limited to "apps from Meta and Yandex, a technology company that originated in Russia, circumvent[ing] privacy protections in Android devices in ways that allowed their apps to secretly track people as they browsed the web";

c. Your response to Apple's App Tracking Transparency framework;

d. Your expectation that, when You began operating in China, the Chinese government would be able to access the data of users located outside of China, as reported in the book referenced in RFP 32(a);

e. Your practice of combining user data without user consent (so-called "superprofiling"), including such conduct deemed an "exploitative abuse" by the German Bundeskartellamt (Federal Cartel Office) in *Facebook, Data Processing and the Abuse of a Dominant Position*, BUNDESKARTELLAMT (Feb. 7, 2019), https://www.bundeskartellamt.de/SharedDocs/Meldung/EN/Pressemitteilungen/2019/07_02_2019_Facebook.html;

f. Breaches of the data security of Your Super Apps, Cloud Streaming Apps, Messaging Apps, Apps concerning Wearables, and Digital Wallets resulting in the exposure of user data, including breaches based on technical errors or vulnerabilities of which You were aware, *e.g.*, as alleged in *Adkins v. Facebook*. Amended Compl., *Adkins v. Facebook Inc*., No. 3:18-cv-05892 (N. D. Cal. Aug. 16, 2019) ¶ 15 ("Facebook knew for years about the security vulnerability that led to [a 2018 data breach] and consciously disregarded the risk it posed to the safety of users' PII."); and

g. Your sale of user data to third parties without user consent, *e.g.*, as alleged in *In Re: Facebook, Inc. Consumer Privacy User Profile Litigation*. Second Amended Compl., *In Re: Facebook, Inc. Consumer Privacy User Profile Litigation*., No. 3:18-md-02843 (N.D. Cal. Aug. 4, 2020) ¶ 6 ("Facebook is not just a social media company, but also a data broker and surveillance firm. Facebook encourages users to share their content so that Facebook can harvest it, aggregate it, and sell access to it.").

**REQUEST FOR PRODUCTION NO. 33:** Documents sufficient to identify all Your Super Apps, Cloud Streaming Apps, Messaging Apps, and Digital Wallets that were adopted or made available on any of Your App Marketplaces, including the Facebook App Center and the Meta Horizon Store.

**REQUEST FOR PRODUCTION NO. 34:** Documents sufficient to show whether You have offered, could offer, or have evaluated offering an App Marketplace on iPhones, as well as all Documents related to Your efforts or plans to develop such an offering, including any Documents relating to development costs, projected usage, and concerns relating to privacy, security, or fraud.

**REQUEST FOR PRODUCTION NO. 35:** Documents sufficient to show the pricing strategy for Your Apps and App Marketplaces (such as Facebook Mobile, the Facebook App Center, and the Meta Horizon Store), including: (a) the past or present standard commission rate for In-App Purchases You charge to developers that distribute Apps through Your Super Apps or App Marketplaces; (b) a representative sample of any exceptions, discounts, or promotions that You have offered to developers that lower the commission rates or fees You charge developers for a user's In-App Purchase; (c) pricing trends, methods, and formulas; (d) Documents concerning factors used in determining, setting, or adjusting the prices; and (e) any impact (or lack thereof) that any company's commissions have on Your pricing strategy.

**REQUEST FOR PRODUCTION NO. 36:** For Your Super Apps and App Marketplaces, such as the Facebook App Center or the Meta Horizon Store, Documents sufficient to show: (a) Your past or present decisions, current or previously operative guidelines, standards, other requirements, or practices that You apply to any Apps submitted for inclusion on Your App Marketplaces, including Your policies and procedures for pricing and payments for such Apps;

and (b) whether You block Apps from any of Your App Marketplaces based on (i) how a developer delivers content and services (*e.g.*, whether content is installed on a device or streamed from the cloud), (ii) a developer's choice of In-App Purchase system, (iii) a developer's advertising, (iv) a developer's data collection, and/or (v) content.

**REQUEST FOR PRODUCTION NO. 37:** For Your Super Apps and App Marketplaces, such as Facebook App Center or the Meta Horizon Store, Documents sufficient to show: (a) any features that differ from the Apple App Store; (b) whether any of Your App Marketplaces offer features, tools, or services to users and/or developers that the Apple App Store does not offer; (c) any features, tools, or services available to Meta first-party Apps that are not available to third-party developers; and (d) any comparison between Your approach to Mini-Programs and App Review on the one hand and, on the other, Apple's or any other App Marketplace's approach to App Review.

**REQUEST FOR PRODUCTION NO. 38:** Past and present contracts between: (a) You and other Smartphone manufacturers; (b) You and App Marketplaces; and (c) You and developers who distribute Apps or Mini-Programs through Facebook Mobile, the Facebook App Center, Facebook Gaming, and the Meta Horizon Store.

**REQUEST FOR PRODUCTION NO. 39:** Documents sufficient to identify for each Mini-Program available on Facebook Mobile and Your other Super Apps: (a) the monthly active users; (b) the developer; (c) the privacy and security features; (d) any consumer complaints concerning each Mini-Program; (e) the launch date; and (f) the discontinuation date.

**REQUEST FOR PRODUCTION NO. 40:** All Documents and Communications concerning the actual, perceived, or potential relative benefits or drawbacks of Mini-Programs

compared to fully native Apps, including in terms of privacy, security, consumer experience, ease of use, and market demand.

**REQUEST FOR PRODUCTION NO. 41:** Documents sufficient to identify the APIs, operating system features, entitlements, or development tools that Your Super Apps expose to Mini-Programs.

**REQUEST FOR PRODUCTION NO. 42:** All Documents and Communications, including consumer surveys, concerning the effects of Super App and Mini-Program displays, including the effects that an absence of icons, an absence of categories, and flat/text-only displays may have on Super App or Mini-Program success or competitive strength and customer reasons for purchasing or not purchasing Smartphones.

**REQUEST FOR PRODUCTION NO. 43:** All Documents and Communications concerning Your, Apple's, or any other Smartphone manufacturer's, App Marketplace's, or operating system provider's past or present policies or practices as related to the Alleged Conduct, including concerning: (a) Cloud Streaming Apps; (b) Messaging Apps and services; (c) Wearables including any Smartphone's ability to connect and interact with Wearables; and (d) the display or categorization of Mini-Programs.

**REQUEST FOR PRODUCTION NO. 44:** All Documents and Communications relating to Your efforts or plans to offer Your own Wearable product or digital payment service for iOS or Android, including any Documents related to a project called "Milan" and to the current or previous versions of Your Meta Quest headset, and including any Documents or data relating to: (a) the costs of developing the product or solution; (b) the extent to which customers used or would use the product or solution; (c) any actual or potential concern relating to the privacy and/or security of the product or solution; (d) the actual or potential discontinuation of the product or

solution; and (e) Your efforts to create compatibility between the product or solution and iPhones and other Smartphones, including the standard or other method used for notifications.

**REQUEST FOR PRODUCTION NO. 45:** All Communications with any government agency, including without limitation the European Commission, Offices of the Attorney General for any U.S. State, the U.S. Federal Trade Commission, the U.S. Department of Justice, or the U.S. Department of Defense concerning any reports, outages, complaints, investigations, or security incidents concerning user privacy, user or system security, fraudulent activity, or exposure of users to objectionable content.

**REQUEST FOR PRODUCTION NO. 46:** All Documents and Communications concerning any efforts by You, whether direct or indirect, alone or in concert with any Person, to change, influence, circumvent, lobby for legislation related to, or draw government or public attention to any of Smartphone manufacturer, operating system provider, or App Marketplace's policies or practices, including any contractual or policy terms related to App features or distribution, any fees or other monetary penalties or incentives, or any policies or technical limitations concerning App features or APIs.

**REQUEST FOR PRODUCTION NO. 47:** Documents sufficient to show the reasons for Facebook's acquisitions of WhatsApp and Oculus VR, including: (a) Documents concerning strategic plans in connection with the acquisitions; (b) regulatory submissions related to the acquisitions; and (c) competitive or market share analyses concerning the acquisitions.

**REQUEST FOR PRODUCTION NO. 48:** All Documents and Communications concerning the basis, if any, for Mark Zuckerberg's statements concerning Apple and its products and services on the "The Joe Rogan Experience #2255" podcast episode released January 10, 2025, including Mr. Zuckerburg's claims that: (a) at least one of Apple's protocols that Mr. Zuckerberg

claims can be used by AirPods but not Meta Ray-Ban glasses is "insecure because [Apple] didn't build any security into it"; and (b) there are "all these small companies that, like, probably can't even exist because of the taxes that [Apple] put in place."

**REQUEST FOR PRODUCTION NO. 49:** All Communications between You and any third-party entity about *Apple Smartphone Antitrust Litigation*, No. 4:11-cv-06714 (N.D. Cal.), *Labcorp v. Davis*, No. 24-304 (U.S.), or *Epic Games v. Apple*, No. 4:20-cv-05640 (N.D. Cal.), including Communications with third-party experts and Communications with agents, counsel, or other representatives for those plaintiffs and/or putative intervenors.

**REQUEST FOR PRODUCTION NO. 50:** The exhibits labeled PX3774, PX15118, PX15240, and PX12347, which were referenced in the Federal Trade Commission's April 14, 2025 Opening Statement for the *FTC v. Meta* trial, No. 20-cv-3590 (D.D.C.), and all Documents relating to the statements therein that: (a) "Privacy has consistently been the top-rated area users want Facebook to improve"; (b) "Consumers 'express that their concern about privacy and data collection outweigh any potential benefits of targeted ads'"; and (c) "Consumers don't come to Facebook to look at ads."

**REQUEST FOR PRODUCTION NO. 51:** All Documents and Communications supporting Sheryl Sandberg's testimony in the *FTC v. Meta* trial, No. 20-cv-3590 (D.D.C.), that: (a) in 2012, the transition to mobile was a huge opportunity for Facebook; and (b) "communication and sharing grows faster, better, and cheaper every single day and at a super linear rate," as shown, for example, by the fact that in 2012, phones could not load videos but loading videos on phones has since become widespread.

**REQUEST FOR PRODUCTION NO. 52:** All Documents and Communications showing how You compete with iMessage, including a September 25, 2012, document presented

at the *FTC v. Meta* trial, No. 20-cv-3590, in which Meta Chief Operating Officer Javier Olivan discussed "going nuclear with Apple."

**REQUEST FOR PRODUCTION NO. 53:** All Documents and Communications concerning the following statements by the Coalition for a Competitive Mobile Experience, including underlying analyses or data, drafts, or bases for such statements:

a. "[S]martphone platform owners . . . are locking users into proprietary systems, limiting choice, and increasing costs for all consumers," *see* Post, X.COM (APR. 30, 2025), https://x.com/competitiveexp/status/1917602344507994153;

b. "Smartphone gatekeepers should not be permitted to discriminate against competing software, apps, or hardware (e.g. earbuds, watches, health wearables) by degrading or throttling the consumer experience. Devices and technology from different manufacturers – and the apps that ride on them – should be able to work seamlessly";

c. "App store providers should promote competition and choice in the app economy through equal treatment of competing app stores on their operating systems, by providing flexibility in pricing and payment options, avoiding unreasonable interference that limits consumer choice, and not preferencing their own offerings over others";

d. "Age-based content restrictions are most effective at the app store level because it is where apps are purchased, and the app store already has the age data," including any alleged obstacles to developers conducting age verification;

e. "While the smartphone ecosystem has provided consumers with great benefits, it has led to a duopoly where dominant platforms control the market and limit consumer choice to their own benefit," including any benefits from any "smartphone ecosystem" and the existence of an alleged "duopoly"; and

f. "Leveling the playing field, increasing interoperability, and adding age-based content restrictions in the app store will give consumers the power they deserve, providing more freedom and access, all while lowering costs." *See Coalition Launches to Take on Anti-Competitive Smartphone Platform Duopoly*, COALITION FOR A COMPETITIVE MOBILE EXPERIENCE (accessed June 16, 2025), https://www.competitiveexp.com/coalition-launches-to-take-on-anti-competitive-smartphone-platform-duopoly/.