**KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.**
Ana N. Paul (*pro hac vice*)
Hannah D.C. DePalo (*pro hac vice*)
Stephanie E. Levin (*pro hac vice*)
Natalie E. Giotta (*pro hac vice*)
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Telephone: (202) 326-7900
Facsimile: (202) 326-7999
E-mail: apaul@kellogghansen.com
hdepalo@kellogghansen.com
slevin@kellogghansen.com
ngiotta@kellogghansen.com

**SULLIVAN & CROMWELL LLP**
Renata B. Hesse (SBN 148425)
550 Hamilton Avenue
Palo Alto, CA 94301-2010
Telephone: (650) 461-5600
Facsimile: (650) 461-5700
E-mail: hesser@sullcrom.com

Shane M. Palmer (SBN 308033)
125 Broad Street
New York, NY 10004-2498
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: palmersh@sullcrom.com

*Counsel for Respondent Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**IN RE APPLE INC.'S APPLICATION FOR ORDER COMPELLING COMPLIANCE WITH NON-PARTY SUBPOENA SERVED ON META PLATFORMS, INC. IN THE PENDING CASE *UNITED STATES ET AL. V. APPLE INC.*, NO. 2:24-CV-04055 IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

Case No. 3:26-mc-80274-JCS

**META PLATFORMS, INC.'S MOTION TO QUASH AND OPPOSITION TO APPLE INC.'S MOTION (1) TO COMPEL DISCOVERY FROM NON-PARTY META PLATFORMS, INC.; AND (2) TO TRANSFER MOTION TO THE DISTRICT OF NEW JERSEY PURSUANT TO FED. R. CIV. P. 45(f)**

The Hon. Joseph C. Spero

## TABLE OF CONTENTS


INTRODUCTION .......... 1

BACKGROUND .......... 2

LEGAL STANDARD .......... 5

ARGUMENT .......... 6

I. THE COURT SHOULD QUASH APPLE'S ENTIRE SUBPOENA TO META .......... 6

II. APPLE'S MOTION TO COMPEL SHOULD BE DENIED .......... 7

A. Because Meta Is A Nonparty, Party-Like Discovery Is Not Appropriate .......... 8

B. Meta's Productions Already Satisfy Meta's Nonparty Discovery Obligations .......... 10

C. Even If Apple Is Entitled To More Discovery, It Demands Too Much .......... 12

1. Apple's Proposed Custodians Are Duplicative And Unduly Burdensome .......... 12

2. Apple's Requests Are Irrelevant, Overbroad, And Unduly Burdensome .......... 14

3. Apple's Search Protocol Is Untethered To The Issues In The Case, Crushingly Burdensome, And Disproportionate .......... 16

4. The Court Should Deny Apple's Requests Due to Other Infirmities .......... 18

a) Apple's Request Seeking Publicly Available Documents .......... 18

b) Apple's Requests Relating to Privacy and Security .......... 19

c) Apple's Request Regarding Negative Press about Meta .......... 20

d) Apple's Requests About Meta's Political Activity .......... 21

e) Apple's Request For Meta's Communications About The Litigation .......... 22

5. Apple's Request For A CID Refresh Should Be Considered Part of The Cumulative Burden of The Subpoena .......... 22

III. META IS ENTITLED TO COSTS OF COMPLIANCE .......... 23

IV. THE COURT SHOULD DENY APPLE'S MOTION TO TRANSFER .......... 24

CONCLUSION .......... 25

TABLE OF AUTHORITIES

PAGE(S)

**CASES**

*Alta Devices, Inc. v. LG Elecs., Inc.*, 2019 WL 8757255 (N.D. Cal. Feb. 20, 2019) .............................. 12

*Apple Inc. v. Match Grp., Inc.*, 2021 WL 3727067 (N.D. Cal. Aug. 19, 2021) .......................... 21, 22, 25

*Apple iPhone Antitrust Litig.*, *In re*, 2020 WL 5993223 (N.D. Cal. Oct. 9, 2020) .......................................... 6, 7, 13, 15, 16, 18, 19, 20, 25

*Audio MPEG, Inv. v. HP Inc.*, 2017 WL 950847 (N.D. Cal. Mar. 10, 2017).............................. 15, 17, 20

*Convolve, Inc. v. Dell, Inc.*, 2011 WL 1766486 (N.D. Cal. May 9, 2011) .......................................... 6, 14

*Cornell v. Columbus McKinnon Corp.*, 2015 WL 4747260 (N.D. Cal. Aug. 11, 2015) ........................... 9

*Culliver v. Center for Toxicology & Environmental Health LLC*, 2022 WL 475185 (N.D. Fla. Feb. 16, 2022)....................................................................... 9

*DMCA § 512(h) Subpoena to Twitter, Inc.*, *In re*, 608 F.Supp.3d 868 (N.D. Cal. 2022).......................... 6

*Drone Techs., Inc. v. Parrot S.A.*, 838 F.3d 1283 (Fed. Cir. 2016)........................................................ 10

*eBay Seller Antitrust Litig.*, *In re*, 2009 WL 10677051 (W.D. Wash. Aug. 17, 2009) ................... 6, 7, 16

*Elec. Scripting Prods., Inc. v. HTC Am. Inc.*, 2021 WL 3773607 (N.D. Cal. Aug. 25, 2021).................. 6

*Epic Games, Inc. v. Apple Inc.*, 493 F. Supp. 3d 817 (N.D. Cal. 2020) ................................................. 21

*Free Stream MediaCorp. v. Alphonso Inc.*, 2017 WL 11632962 (C.D. Cal. May 4, 2017)...................... 6

*Intermarine, LLC v. Spliethoff Bevrachtingskantoor, B.V.*, 123 F. Supp. 3d 1215 (N.D. Cal. 2015) ...... 19

*Intermec Techs. Corp. v. Palm, Inc.*, 2009 U.S. Dist. LEXIS 132759 (N.D. Cal. May 15, 2009)............ 7

*Last v. M-I*, 2022 WL 3012206 (C.D. Cal. May 19, 2022)..................................................................... 22

*Leader Techs., Inc. v. Facebook, Inc.*, 2010 WL 761296 (N.D. Cal., Mar. 2, 2010) .............................. 20

*Legal Voice v. Stormans Inc.*, 738 F.3d 1178 (9th Cir. 2013) ................................................................. 23

*Lemberg Law LLC v. Hussin*, 2016 WL 3231300 (N.D. Cal. June 13, 2016).......................................... 5

*LifeScan, Inc. v. Smith*, 2022 WL 22895630 (D.N.J. July 21, 2022)................................................ 12, 13

*Mallinckrodt LLC v. Actavis Lab'ys FL, Inc.*, 2017 WL 5476801 (D.N.J. Feb. 10, 2017) ....................... 9

*Moon Mountain Farms, LLC v. Rural Cmty. Ins. Co.*, 301 F.R.D. 426 (N.D. Cal. 2014) ....................... 24

*Music Grp. Macao Com. Offshore Ltd. v. Does*, 82 F. Supp. 3d 979 (N.D. Cal. 2015).......................... 25

*New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638 (2d Cir. 2015) .................................... 19

*Personalized Media Commc'ns, LLC v. Top Victory Elecs. (Taiwan) Co.*, 2016 WL 8542561 (N.D. Cal. Aug. 3, 2016) ................................................................ 24, 25

*Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604 (C.D. Cal. 2013) ............................................ 10

*Riganian v. LiveRamp Holdings, Inc.*, 2026 WL 948598 (N.D. Cal. Apr. 8, 2026)......................... 12, 13

*Rusoff v. Happy Grp., Inc.*, 2023 WL 114224 (N.D. Cal. Jan. 5, 2023)............................................ 13

*Shasta Linen Supply, Inc. v. Applied Underwriters, Inc.*, 2018 WL 2981827 (E.D. Cal. June 14, 2018) ................................................................... 23

*Straight Path IP Grp. v. Blackberry Ltd.*, 2014 WL 3401723 (N.D. Cal. July 8, 2014) .................. 5, 6, 7

*Subpoena to Apple Inc.*, *In re*, 2014 WL 2798863 (N.D. Cal. June 19, 2014) ...................................... 5

*United States v. Columbia Broad. Sys., Inc.*, 666 F.2d 364 (9th Cir. 1982) ......................................... 9

*United States v. Josleyn*, 206 F.3d 144 (1st Cir. 2000)......................................................................... 8

*Uriel Pharmacy Health & Welfare Plan v. Advoc. Aurora Health, Inc.*, 348 F.R.D. 329 (E.D. Wisc. 2025) ............................................................................................ 11

*Valcor Eng'g Corp. v. Parker Hannifin Corp.*, 2018 WL 3956732 (C.D. Cal. July 12, 2018)............... 24

*Valeant Pharms., Inc.*, *In re*, 2017 WL 3429342 (D.N.J. Aug. 9, 2017)................................................ 9

*Valeant Pharms. Int'l, Inc.*, *In re*, 2019 WL 1578677 (D.N.J. Apr. 12, 2019)....................................... 9

**RULES**

Fed. R. Civ. P. 26.......................................................................................................... 5, 6, 14, 18, 22

Fed. R. Civ. P. 26(b)(1).................................................................................................................... 6

Fed. R. Civ. P. 26(b)(2)(C)(i) ........................................................................................................... 5

Fed. R. Civ. P. 45 ...................................................................................................... 5, 6, 7, 14, 22, 25

Fed. R. Civ. P. 45(d) ..................................................................................................................... 5, 6

Fed. R. Civ. P. 45(d)(1)..................................................................................................................... 5

Fed. R. Civ. P. 45(d)(2)(B)(ii) ......................................................................................................... 23

Fed. R. Civ. P. 45(d)(3)(A)(iv) .......................................................................................................... 6

Fed. R. Civ. P. 45(d)(3(B)(i)............................................................................................................... 6

Fed. R. Civ. P. 45(f) ................................................................................................................... 24, 25

**OTHER MATERIALS**

ABC News, "Apple allowed child sexual abuse materials on iCloud for years," Feb. 19, 2026, https://tinyurl.com/3ndhzh55 .......... 17

Joint Letter, *Alta Devices, Inc. v. LG Elecs., Inc.*, No. 5:18-cv-00404-LHK, Dkt. 90 (N.D. Cal. Feb. 6 2019).......... 13

Apple Opp. Letter, *Klein v. Meta Platforms, Inc.*, 3:20-cv-08570, Dkt. 415 (N.D. Cal. Jan. 16, 2023) .......... 20

*United States v. Apple Inc.*, No. 2:24-cv-04055 (D.N.J.) ("*U.S. v. Apple*"):

Am. Compl., Dkt. 51 (June 11, 2024).......... 19

Dispute Letter, Dkt. 384 (Mar. 3, 2026) .......... 1

Joint Letter, Dkt. 422 (Apr. 16, 2026) .......... 4, 11

**INTRODUCTION**

Apple assured the New Jersey court that it "worked to 'minimize[] the burden on non-parties to the extent possible,'" Dispute Letter, *United States v. Apple Inc.*, No. 2:24-cv-04055, Dkt. 384 at 8 (D.N.J. Mar. 3, 2026) ("*U.S. v. Apple*"), but its actions here show otherwise. Apple served an invasive, irrelevant, and overbroad subpoena containing 53 requests for production ("RFPs") with multiple subparts—totaling over 151 requests spanning over a decade—without even reviewing the 17,000 documents Meta *had already produced*. For nearly a year, Apple refused to drop a single request. Each time Meta asked if Apple would narrow its subpoena, Apple refused, instead repeating the mantra, "our RFPs are our RFPs." Apple now touts itself for supposedly narrowing the subpoena, but its motion still seeks documents in response to 34 RFPs, which total 110 requests when including subparts. Apple's demands remain irrelevant, overbroad, unduly burdensome, and duplicative of Meta's production.

Apple's 110 requests are a fishing expedition for documents—including from Meta's most senior executives—that Apple cannot describe and whose relevance it has not and cannot articulate. Apple asks the Court to compel Meta to: (1) produce "all documents and communications" responsive to 56 requests by running Apple's 41 search strings, many dozens of words long, across 22 custodians (the "Custodial Searches"); (2) search for documents responsive to 54 unwieldy "sufficient to show" requests, for which Apple already has sufficient responsive documents (the "Go-Get Searches"); and (3) refresh Meta's production of 17,000 documents that Apple already has (the "CID Refresh"). Granting Apple's motion would require Meta to review, at a minimum, over 7 million documents, a herculean task that is completely unreasonable for a non-party.

The Court should quash Apple's subpoena: it seeks highly confidential commercial information and is disproportionate, massively overbroad, and unduly burdensome. Tweaking Apple's Custodial Searches or rewording its Go-Get Searches would not cure these defects, particularly when Apple cannot demonstrate the requisite substantial need for this volume of competitively sensitive information. If the Court declines to quash the subpoena, it should (1) limit the subpoena to Meta's reasonable counterproposal, outlined in Paul Decl. ¶¶ 46-49, which provides relevant discovery without undue burden, and (2) order Apple to pay Meta's compliance costs.

The Court should also deny Apple's motion to transfer to New Jersey. Apple has not

demonstrated "exceptional circumstances"; the pendency of the underlying litigation there does not qualify. Both Apple and Meta "reside" in the Northern District of California and have litigated numerous subpoena disputes here, so transfer would pose an unnecessary burden.

**BACKGROUND**

Apple is a global, multibillion-dollar company that, among other things, manufactures, markets, and sells iPhones. The United States Department of Justice's ("DOJ") operative complaint alleges that Apple "has built and sustained the most dominant smartphone platform and ecosystem in the United States." Moody Ex. G at 7. "Rather than respond to competitive threats by offering lower smartphone prices to consumers or better monetization for developers, Apple would meet competitive threats by imposing a series of shapeshifting rules and restrictions in its App Store guidelines and developer agreements that would allow Apple to extract higher fees, thwart innovation, offer a less secure or degraded user experience, and throttle competitive alternatives." *Id.* at 4. DOJ alleges that Apple "has deployed this playbook across many technologies, products, and services, including super apps, text messaging, smartwatches, and digital wallets, among many others." *Id.*

Meta is one of many companies that offers consumers technologies, products, and services reliant on Apple's iPhone platform and ecosystem. Meta's best-known apps are Facebook, Instagram, WhatsApp, and Messenger. To distribute these products to iPhone users, Meta must abide by the rules and restrictions in Apple's App Store guidelines and developer agreements. Meta also operates Reality Labs, which offers augmented-reality and virtual-reality products, including Ray-Ban Meta AI glasses and Meta Quest devices, and software and content through the Meta Horizon Store.

Prior to filing the complaint, DOJ spent at least 4 years investigating Apple's conduct. Paul Decl. ¶¶ 5, 9. As part of that investigation, DOJ served Meta with a Civil Investigative Demand ("CID") on October 28, 2021, requiring Meta to produce certain materials. *Id.* ¶ 7. Meta produced over 17,000 documents [redacted]. *Id.* DOJ filed its complaint against Apple on March 21, 2024, which it amended on June 11, 2024. Moody Ex. G.

Apple served a subpoena on Meta on June 16, 2025, containing 53 RFPs, each of which include several subparts, totaling over 151 separate requests. *See* Moody Ex. I. Each subpart also contains numerous components requesting a laundry list of documents. For example, RFP 9 contains 8 sub-

requests for at least 5 different Meta apps, including all user complaints spanning a decade; RFP 9 asks about every update to and feature of Meta's apps for over a decade. *Id.*

Before serving the subpoena, Apple received the 17,000 documents Meta produced in response to DOJ's CID, [redacted] Paul Decl. ¶ 7. But Apple served its subpoena without reviewing these materials to determine what additional information, if any, it needed from Meta. *Id.* ¶ 12. During Apple and Meta's first meet and confer, Meta explained that many of Apple's RFPs were obviated by the CID production. *Id.*; Paul Ex. 3 (chart comparing RFPs and CID). But still today, Apple will not acknowledge that any of the 17,000 documents Meta produced satisfies any component of the subpoena. Paul Decl. ¶ 16. Although Apple had DOJ's CID requests and Meta's production letters identifying the requests to which the documents responded, Apple insisted that the documents were useless without the search terms used to select them. *Id.*[1]

Apple has stonewalled Meta's attempts to facilitate compliance with the subpoena. In multiple meet and confers in 2025, Apple refused to prioritize any of the 151 requests. *Id.* ¶¶ 12, 16. For nearly a year, Apple refused to drop even a *single* subpart of any RFP. *Id.* Every time Meta asked if Apple would narrow the subpoena, Apple would respond: "our RFPs are our RFPs." *Id.* ¶ 12. Nonetheless, Meta produced documents in response to three of Apple's least burdensome requests. *Id.* ¶ 15.

On January 15, 2026, Apple provided Meta with a proposed "search protocol" covering the 151 requests. *Id.* ¶ 17; Moody Ex. N. Apple expected Meta to run search strings over 25 different Meta employees' files, including its CEO, Mark Zuckerberg, to satisfy the bulk of the RFPs. It also requested that Meta separately search for documents responsive to 21 RFPs not encompassed by the proposed custodial search. Meta asked Apple to provide information on why it believed all 25 custodians were necessary. Paul Decl. ¶ 18-19. Meta then did not hear from Apple for months. *Id.* ¶ 20.

On May 15, 2026, Apple revised its search protocol to cover 110 requests (what it counts as 34 RFPs). *Id.* ¶ 20-24. Even after this purported narrowing, Apple sought the Custodial Searches in response to 56 "all documents and communications" requests and the Go-Get Searches for documents "sufficient to show" in response to 54 requests. *Id.* ¶ 23. While Apple touts its alleged good faith effort

[1] Meta agreed to provide the search terms; Apple moved to compel before Meta could. Paul Decl. ¶ 28.

to narrow the subpoena, the record shows otherwise. For example, Apple did more to narrow its discovery requests to the Government—a party to the underlying action—than it has to Meta. Apple narrowed its discovery requests to the Government from 39 to just 6-9 RFPs, *U.S. v. Apple*, Dkt. 422 at 5; meanwhile, Apple's "final compromise" proposal to Meta contains over 12 times as many requests.

Apple's supposedly narrowed May 2026 search protocol still applied to all 25 originally demanded custodians, and the search strings themselves spanned 11 pages in size 10 font. Moody Ex. O. Shockingly, Apple also *expanded* the terms of some RFPs to ask for more documents. Paul Decl. ¶ 22. Despite the unreasonableness of Apple's continued demands, Meta agreed to meet and confer numerous times about the May 2026 protocol. As a gating item, Apple and Meta could not agree on the list of custodians: Meta agreed to 18 of Apple's 25 custodians, but Apple refused to drop its request for documents from 4 senior Meta executives. *Id.* ¶ 27. Meta also proposed running certain search terms over only certain custodians—given their differing roles and responsibilities within the company—to limit irrelevant hits from employees unconnected to the issues the underlying RFPs targeted, but Apple rejected that proposal. *Id.*; *see* Paul Exs. 5 & 6. Apple and Meta also could not agree on how to narrow the search terms, which on their face would have swept in irrelevant communications from generic terms like "iPhone," "iMessage," "Instagram," "China," and "privacy." Paul Decl. ¶ 26; Moody Ex. O.

Once the parties had exhausted the back and forth over the modifications each side was willing to accept to the search terms, Meta agreed to provide "hit counts" for the proposed searches Meta was not objecting to in full (RFPs 6, 9(a-d, g, h), 18, 20, 21, 25, 27, 28, 40, 42, 44) and only over Meta's proposed 18 custodians. *Id.* ¶ 28. Providing those hit counts proved to be its own challenge, as Apple's search terms contained syntax errors that prevented those terms from running. *Id.* ¶ 29.

On August 21, after resolving the syntax and duplication issues, outside counsel for Meta received hit counts to share with Apple. *Id.* ¶ 30. The queries, reflecting only a *subset* of Apple's May 2026 protocol, resulted in over 3 million unique hits. *Id.* Meta was preparing correspondence to Apple when Apple informed Meta on August 27 that it was moving to compel. *Id.* ¶ 31. Meta responded to Apple that same day, noting that in light of the over 3 million hits the subset of Apple's searches had generated, the parties should first meet and confer to narrow the terms. *Id.* ¶ 32. Apple did not respond and moved to compel the next day. *Id.*

Meta has subsequently run hit counts over the complete list of queries in Apple's motion. *Id.* ¶¶ 33-44. Apple's Custodial Searches, for the 56 "all documents and communications" requests over 18 custodians, produce over 6.8 million hits. *Id.* ¶¶ 33-34. Adding in the 12 (of the 54) Go-Get Searches for which Apple also provided search terms, brings the total to 9.2 million unique hits. *Id.* ¶ 35-36. Searching for documents in response to the other Go-Get Searches would require reviewing even more documents. *Id.* ¶¶ 43. Using Apple's own math for the pace of its own document productions, and assuming Meta hired a team of 400 contract attorneys (as Apple it has), producing just the documents responsive to the Custodial Searches would take nearly 7 months, and the Go-Get Searches would add at least another two and a half. *Id.* ¶¶ 40-44. And this does not account for Apple's additional demand that Meta refresh its CID production, which would add still more documents. *Id.* ¶ 37.

While Apple's demands of a nonparty are outside the bounds of Federal Rules of Civil Procedure 26 and 45, Meta has prepared a counterproposal to refresh the CID production and provide Apple documents produced in a parallel action. *Id.* ¶¶ 46-49. This provides Apple with the discovery it seeks while limiting Meta's burden.

## LEGAL STANDARD

To prevail on its motion to compel, Apple must first demonstrate that the information requested is within the scope of permissible discovery. *See In re Subpoena to Apple Inc.*, 2014 WL 2798863, at *2 (N.D. Cal. June 19, 2014). Only then would the burden shift to Meta to show that "the information is being sought to delay bringing the case to trial, to embarrass or harass, is irrelevant or privileged, or that [Apple] . . . fails to show need for the information." *Id.*

The scope of nonparty discovery is limited by Rules 26 and 45. Rule 45(d)(1) protects a subpoenaed nonparty from "undue burden or expense," and Rule 26(b)(2)(C)(i) provides that a court "must limit the frequency or extent of discovery . . . if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." "The Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts." *Lemberg Law LLC v. Hussin*, 2016 WL 3231300, at *5 (N.D. Cal. June 13, 2016) (citation omitted). Courts routinely enforce these protections. *E.g.*, *Straight Path IP Grp. v. Blackberry Ltd.*, 2014 WL 3401723 at *5 (N.D. Cal. July 8,

2014) (granting nonparty motion to quash); *Elec. Scripting Prods., Inc. v. HTC Am. Inc.*, 2021 WL 3773607, at *2, 5 (N.D. Cal. Aug. 25, 2021) (same).

Requests to nonparties should be "narrowly drawn to meet specific needs for information." *Convolve, Inc. v. Dell, Inc.*, 2011 WL 1766486, at *2 (N.D. Cal. May 9, 2011). The requests must be "relevant" *and* "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). An overbroad subpoena may still be unduly burdensome even if some of the documents sought are arguably relevant. *E.g.*, *Free Stream MediaCorp. v. Alphonso Inc.*, 2017 WL 11632962, at *3-4 (C.D. Cal. May 4, 2017). The fact that the underlying action is an antitrust case does not change Rules 45 and 26: "An antitrust action does not come with an automatic entitlement to force non-parties to reveal their competitive thinking." *In re eBay Seller Antitrust Litig.*, 2009 WL 10677051, at *5 (W.D. Wash. Aug. 17, 2009).

## ARGUMENT

### I. THE COURT SHOULD QUASH APPLE'S ENTIRE SUBPOENA TO META

Apple's subpoena is disproportionate, irrelevant beyond what has already been disclosed publicly and in discovery, unduly burdensome, and demands Meta's confidential commercial information. Courts in this district routinely quash such subpoenas. *E.g.*, *Straight Path*, 2014 WL 3401723, at *5 (refusing to enforce "overbroad and burdensome" 46-request nonparty subpoena).

A court *must* quash a subpoena that "subjects a person to undue burden." Rule 45(d)(3)(A)(iv).[2] Rule 45 also "provides additional protections where a subpoena seeks trade secret or confidential commercial information from a nonparty." *In re Apple iPhone Antitrust Litig.*, 2020 WL 5993223, at *3 (N.D. Cal. Oct. 9, 2020) (citation omitted). "If a non-party can show that requested information is 'a trade secret or other confidential research, development, or commercial information,' a court may quash or modify a subpoena." *Id.* (quoting Rule 45(d)(3)(B)(i)). "The burden then shifts to the requesting party to (1) show a "substantial need for the testimony or material that cannot be otherwise met without undue hardship . . . , and (2) ensure[] that the subpoenaed person will be reasonably compensated." *Id.*

Apple's subpoena, with its 110 separate requests, would require Meta to review over 7 million

[2] Meta's motion to quash is timely; Meta timely sent responses and objections to Apple's subpoena and has since been negotiating with Apple in good faith. *See In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F.Supp.3d 868, 875 n.2 (N.D. Cal. 2022). Before Apple filed this motion, the parties were negotiating to resolve Meta's objections; the parties had, in Meta's view, not concluded their efforts.

documents for the Custodial Searches alone. Many of those 110 requests are not even relevant to the case. Even if they were, however, requiring a nonparty to review over 7 million documents is unreasonable—no nonparty should be "be forced to incur tens of thousands of dollars collecting, reviewing, producing, and printing documents and source code potentially responsive to [such] expansive requests." *Straight Path*, 2014 WL 3401723, at *6. Moreover, Apple already has sufficient information to defend itself with public documents and the 17,000 documents Meta *already* produced.

Additionally, Apple does not dispute that the information it requests is confidential research or commercially sensitive (nor could it), yet Apple has failed to demonstrate a substantial need for this discovery. Among other things, Apple seeks Meta's: privacy and security analyses and marketing and strategic plans (RFP 9); comparisons between Apple and Meta's competing messaging apps, including the consumer experience, privacy, and security (RFP 20); "strategy, consumer research, and consumer response to all advertising campaigns" about messaging (RFP 24); evaluations of offering a competing app marketplace (RFP 35); and comparisons between Meta's and Apple's app stores (RFP 37). This confidential information is not appropriate for nonparty discovery. *In re Apple*, 2020 WL 5993223, at *6-9 (documents about consumer attitudes toward competing products, including "perceptions of the price, design, performance, security, privacy;" "whether to offer an app marketplace;" and "strategy and plans for marketing" protected by Rule 45); *In re eBay*, 2009 WL 10677051, at *5-6 (similar).

This is an instance where "[t]he swath of the subpoena is so burdensome[,] it would be bad policy to [] whittle it back to something narrow and reasonable. Instead, the baby should go out with the bath water—the entire defective subpoena will be quashed in its entirety." *Straight Path*, 2014 WL 3401723, at *5; *see also Intermec Techs. Corp. v. Palm, Inc.*, 2009 U.S. Dist. LEXIS 132759, at *7 (N.D. Cal. May 15, 2009) (similar). Because Apple's defective subpoena cannot be salvaged, the Court should deny Apple's motion to compel and quash the subpoena.

## II. APPLE'S MOTION TO COMPEL SHOULD BE DENIED

Apple's subpoena and its Motion are replete with problems: (i) Meta is not a party to the case and discovery should therefore accord with Rules 26 and 45 (Part II.A) and (ii) Meta has already produced substantial responsive discovery (Part II.B). If the Court orders more discovery it should reject Apple's proposal because (iii) Apple's 22 proposed custodians are duplicative and excessive (Part

II.C.1); (iv) Apple's RFPs, and the queries in the Custodial and Go-Get Searches, are overly broad, disproportionate, and unduly burdensome (Parts II.C.2-3); and (v) many of Apple's RFPs are legally deficient (Part II.C.4). The Court should not order Meta to refresh the CID production on top of all of Apple's requests (Part II.C.5). Instead, Apple should be required to accept Meta's counteroffer, which offers to refresh relevant portions of the CID production and to produce documents that are produced in another, related litigation—a compromise that would satisfy any additional discovery needs.

### A. Because Meta Is A Nonparty, Party-Like Discovery Is Not Appropriate

Apple contends that Meta's compliance with DOJ's pre-complaint CID, [redacted], and its public expression of concerns about Apple's conduct make Meta unlike other nonparties and justify party-like discovery. Apple is wrong on the law and the facts. None of these activities, individually or together, warrants departure from nonparty discovery standards, and each case Apple cites involved a particularized interest in the litigation that Meta plainly lacks.

*First*, Meta's compliance with DOJ's CID does not transform it into a party. Meta was required by law to comply with the CID. Moody Ex. A at 1. And Meta was just one of the "numerous" nonparties that received CIDs from DOJ. Paul Decl. ¶ 6. Compliance with compulsory process cannot make Meta anything other than a standard nonparty.

*Second*, Meta's other [redacted] Indeed, in *United States v. Josleyn*, 206 F.3d 144 (1st Cir. 2000), even a nonparty that worked so closely with the government that the lead prosecutor considered the nonparty lawyers a part of the government's "team" was not transformed into a party from whom discovery could be ordered. *Id.* at 152-53. [redacted] Adopting Apple's position would have serious implications for future government investigations, as differentially burdening cooperating nonparties "might chill the willingness of victims of antitrust violations to

cooperate with the Government if that cooperation could subject them to unreimbursed discovery as 'interested' nonparties." *United States v. Columbia Broad. Sys., Inc.*, 666 F.2d 364, 372 (9th Cir. 1982).

*Third*, Meta's public concerns regarding Apple's conduct outside of the litigation do not, as Apple claims (at 3 & n.3), provide a basis for party-like treatment. A broad range of companies, including Match, Garmin, Spotify, and Digital Turbine, voiced similar concerns, and Meta was one of 152 companies that filed public comments about the mobile app ecosystem. Nor does Meta's internal strategic planning, Moody Exs. B-D, change the analysis. That Meta, like many firms, developed policy and communications strategies about Apple's practices reflects a general competitive interest, not a particularized stake in this case. *See Columbia*, 666 F.2d at 372 ("No matter how interested" a nonparty is, it is "nevertheless powerless to dictate the scope of the Government's case[.]").

Apple's cited cases are inapposite: each involved a nonparty with a specific legal or financial interest in the judgment far exceeding anything attributable to Meta. In *Culliver v. Center for Toxicology & Environmental Health LLC*, 2022 WL 475185, at *2 (N.D. Fla. Feb. 16, 2022), the nonparty was a paid contractor for defendant BP. In *Cornell v. Columbus McKinnon Corp.*, 2015 WL 4747260, at *3 (N.D. Cal. Aug. 11, 2015), the nonparty had a lien on the judgment. In *Mallinckrodt LLC v. Actavis Laboratories FL, Inc.*, 2017 WL 5476801, at *1, *4-5 (D.N.J. Feb. 10, 2017), the nonparty was a licensor of a patent and a "former party" to the case who had a "financial stake" from the licensing revenue. And in *In re Valeant Pharmaceuticals International, Inc.*, 2019 WL 1578677, at *4 (D.N.J. Apr. 12, 2019), a contractual relationship between the defendant and the nonparty, whereby the defendant allegedly "secretly controlled" the nonparty, *In re Valeant Pharmaceuticals, Inc.*, 2017 WL 3429342, at *1 (D.N.J. Aug. 9, 2017), formed the "core" of the action. In each of these cases, the nonparty had a direct, particularized stake in the specific subject matter of the litigation. Meta has no such stake. And Apple has no support for its speculation (at 6) that [redacted] At most, Meta has a generalized interest in enforcement of the antitrust laws, shared by scores of firms. That diffuse interest is insufficient to treat nonparties as interested parties obligated to bear party-like discovery costs and burdens. *Columbia*, 666 F.2d at 372. Nothing Apple has cited warrants departing from the standards that govern nonparty discovery.

Apple's reliance on Meta's statements in *FTC v. Meta* regarding the "norm" of nonparty

discovery in antitrust cases is misplaced. Meta does not dispute that nonparty discovery is appropriate and has offered substantial cooperation here—a refresh of the CID production and documents from a parallel action. Paul Decl. ¶¶ 46-49. What Meta objects to is the scope of Apple's demands, which far exceed anything any nonparty undertook in *FTC v. Meta*. There, Apple itself only produced about 5,000 documents from 5 custodians; nonparties Snap and TikTok each produced roughly 10,000 documents. *Id.* ¶¶ 50-53. Here, Apple demands that Meta review upwards of 7 million documents from 22 custodians. Apple's own conduct as a nonparty is the best evidence that its demands on Meta are outside the norm.

**B. Meta's Productions Already Satisfy Meta's Nonparty Discovery Obligations**

Apple's motion ignores the 17,000 documents Meta has already produced, pretending that it only has 21 responsive documents. Apple failed to bear its burden of showing why these 17,000 documents are insufficient to respond to Apple's subpoena. *See Drone Techs., Inc. v. Parrot S.A.*, 838 F.3d 1283, 1298 (Fed. Cir. 2016) ("Without any explanation from Drone as to any deficiencies in Parrot's initial production, the court could not have determined that Parrot had not met its burden[.]"). In fact, these 17,000 documents are responsive to *all* of the topics in Apple's motion. As Apple acknowledges (at 4-5), it has documents about [redacted] Apple does not explain how its requests differ from Meta's already significant productions or what is lacking from the existing production, nor could it. The topics requested by DOJ in the CID entirely overlap with the topics in Apple's subpoena to Meta. *See* Paul Ex. 3 (chart mapping RFPs to substantially similar CID Specs).[3]

For example, the 54 Go-Get Searches only seek documents "sufficient to show" certain facts. "[A] request for documents 'sufficient to show' does not require the production of all conceivably relevant information." *Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 616 (C.D. Cal. 2013) (annual reports adequately responded to request for "documents 'sufficient to evidence [Skechers'] revenues and

[3] To give just three examples: RFP 18 and CID Spec. 15 both ask about Apple's restrictions relating to Meta's messaging apps. RFP 19 and CID Specs. 7 & 14 all ask about Meta's decisions to offer In-App Purchases. RFP 23 and CID Spec. 5 both ask about Meta's competitive and market analyses.

profits'"). Apple agrees such requests "permit[] the responding party to select a reasonable set of responsive documents rather than producing every document on a topic." *U.S. v. Apple*, Dkt. 422 at 6; *see also Uriel Pharmacy Health & Welfare Plan v. Advocate Aurora Health, Inc.*, 348 F.R.D. 329, 338 (E.D. Wisc. 2025). Meta has produced representative documents for all these Go-Get Searches, as indicated in Paul Ex. 4:

- RFPs 7 and 39 requests "download and use rates" for Meta's apps and Facebook Mini-Programs. Apple itself has access to download rates. Meta has produced usage data for Instagram, WhatsApp, Facebook, Messenger, Oculus (2015 to 2021), and Facebook Gaming (2021-2022).

- RFP 8 requests, in addition to public information on where Meta's apps are available, documents about "user complaints" about Facebook, Instagram, WhatsApp, and Messenger. Meta has produced documents like "The Voice of the Community Report" that list "Top User Issues."

- RFP 10 requests documents about Meta's estimated revenue loss from In-App Purchase restrictions on gaming products. Apple already has this information. Meta pointed Apple to the underlying slide deck and Apple has other relevant financial modeling.

- RFP 12 requests documents about "any value or benefits" that Apple products provide Meta. Meta has produced documents demonstrating the benefits from Meta's relationship with Apple.

- RFP 13 requests documents about the benefits or drawbacks of Apple's products compared to other companies' products. Meta has produced documents comparing Apple's products to other companies' in the area of News, augmented reality, and artificial intelligence, among others.

- RFP 17 requests documents about the financial performance of Meta's apps. Apple has documents Meta produced, in addition to publicly available documents.

- RFP 22 requests documents about differences in the functionality of Meta's apps across devices. That information is available publicly. [redacted]

- RFP 23 requests documents about the impact of Apple's—or any other company's—app review policies on competition. Meta has produced documents on Meta's views on this issue.

- RFP 24 requests documents about the "strategy, consumer research, and consumer response" to advertising campaigns for Meta's messaging apps. Meta produced documents about these topics.

- RFPs 25 and 26 request documents about encryption, including "whether and in what circumstances" Meta provides unencrypted messages to a third party. That is public information, and Meta has produced documents explaining how Meta's encryption works.

- RFP 30 requests documents about Meta's reasons for discontinuing the Facebook Gaming app. [redacted]

- RFPs 34, 36 and 43 request documents about Meta's app marketplaces and policies that apply to submitted apps. That is public information, and Meta has already produced some of them.
- RFP 37 requests certain comparisons between Meta's app stores and Apple's App Store. That is public information, but Meta has also produced documents that contain such comparisons.
- RFP 46 requests documents about Meta's political efforts around app marketplace policies. Despite the impropriety of the request, Meta has produced hundreds of pages of such material, [redacted]

### C. Even If Apple Is Entitled To More Discovery, It Demands Too Much

The Court should quash Apple's subpoena and deny Apple's motion to compel because Apple has not even attempted to explain why documents Meta has produced or are publicly available are deficient as to each request. But even if Apple were entitled to additional documents, Apple's motion should be denied for the additional reasons detailed below.

#### 1. Apple's Proposed Custodians Are Duplicative And Unduly Burdensome

First, Apple's proposed list of 22 individuals for its demanded Custodial Searches is unjustified. Apple already has documents from 13 Meta custodians whose documents were produced in response to the CID. On top of that, during negotiations, Meta had offered to perform searches for 5 additional custodians Apple requested, for a total of 18 custodians. The only custodians whose files Meta was unwilling to search were 4 "senior custodians" Apple unilaterally selected. Meta, as the producing nonparty, is best positioned to select relevant custodians. *See Riganian v. LiveRamp Holdings, Inc.*, 2026 WL 948598, at *1 (N.D. Cal. Apr. 8, 2026); *LifeScan, Inc. v. Smith*, 2022 WL 22895630, at *9 (D.N.J. July 21, 2022). The burden to obtain court intervention on Meta's custodian selection is high; the choices must be "manifestly unreasonable" or "the resulting production [must have been] deficient." *Riganian*, 2026 WL 948598, at *1. Neither is true here.

***Number of Custodians.*** Meta's offer of 18 custodians is substantial and goes beyond what this court has found proportional in *party* discovery. When Alta Devices demanded 33 custodians from LG, the court limited discovery to 10 custodians that Alta Devices had a factual basis to believe had relevant information. *Alta Devices, Inc. v. LG Elecs., Inc.*, 2019 WL 8757255, at *1 (N.D. Cal. Feb. 20, 2019). Meta has offered nearly double that. Apple has not shown Meta's offer is manifestly unreasonable.

***Senior Executives.*** The Court should not order productions from the four additional "senior custodians." To begin, Meta's offered custodians include the heads of two of Meta's apps who sat on Meta's senior leadership team, Will Cathcart (Head of WhatsApp) and Stan Chudnovsky and Ime Archibong (the former and current Head of Messenger), as well as 12 other Vice Presidents or Directors. Apple's demand for Meta's CEO's and other senior leaders' documents is unfounded. The court in *Alta Devices* found that the plaintiff did not "have a factual basis to obtain" discovery from LG's CTO even where he had expressed interest in the disputed subjects and had meetings related to the subject matter. *See id.*; Joint Letter, *Alta Devices*, No. 18-cv-00404-LHK, Dkt. 90 at 2-3 (N.D. Cal. Feb. 6, 2019); *see also Riganian*, 2026 WL 948598, at *1 (concluding party "needn't designate CEO . . . as a document custodian"). Apple's argument to include 4 more senior executives (at 14) is equally weak, and is based on general claims that they made strategic decisions related to competition. That is not a basis to seek these documents from Meta. As Apple knows, "there is no reason to think that [a nonparty] has a better understanding of its competition with Apple than Apple does." *In re Apple*, 2020 WL 5993223, at *6.

Apple points to documents and public statements from custodians Meta *is* offering (at 14-15) to argue it needs 4 additional custodians. But that gets the point backwards—it demonstrates that Meta's proposed custodians will have the type of documents Apple seeks—and this is exactly the argument that the court rejected in *Riganian*. 2026 WL 948598, at *1 (explaining CEO's public statements did not make any fact more or less probable, and noting that if CEO communicated with other custodians, those communications would be captured by collecting those custodians' files). Because other employees were likely to have documents containing the same or similar information, the court there did not compel production from additional senior custodians. *See id.*

***Custodians Should Be Determined RFP-by-RFP.*** "[C]ustodians . . . must be targeted at relevant information and tailored to avoid creating a burden that outweighs the likely benefits of discovery." *Rusoff v. Happy Grp., Inc.*, 2023 WL 114224, at *3 (N.D. Cal. Jan. 5, 2023). Indeed, Apple already agreed (at 16) that it is reasonable not to run every search string for every custodian. And Meta is better positioned than Apple to determine which of its own employees has relevant information. *See Riganian*, 2026 WL 948598, at *1; *LifeScan* 2022 WL 22895630, at *9. For example, Apple criticizes Meta (at 14, 18) for offering a lone custodian for RFP 44, but fails to acknowledge that RFP 44 is about

wearable devices, and the individual Meta offered is only lone custodian—of any Apple is now demanding—that worked on wearables. To give another example, for RFPs 6 and 9, Apple seeks to compel Meta (at 16) to provide documents from [redacted] But those RFPs seek communications with smartphone manufacturers, operating system providers, or app marketplaces. *See* Moody Ex. I at 12, 13. Meta therefore proposed custodians whose roles generally involve those communications, rather than [redacted] whose roles do not generally involve such interactions. *See* Paul Ex. 5 (chart comparing Meta and Apple's custodian proposals); Paul Ex. 6 (job titles of custodians).

Apple bases its demand for certain additional custodians on [redacted] Ex. M at 34-38. Apple ignores that Meta's compromise offer of additional custodians already includes custodians knowledgeable about each of these issues. [redacted] These types of errors abound.

Meta should not be compelled to comply with Apple's overly broad and irrelevant custodian list.

### 2. Apple's Requests Are Irrelevant, Overbroad, And Unduly Burdensome

Apple seeks to compel Meta to produce documents in response to 34 RFPs, 110 including subparts. But that supposedly narrowed list remains overbroad and burdensome on its face, reaching far beyond what Rules 26 and 45 require of nonparties. Rather than propound targeted RFPs "narrowly drawn to meet specific needs for information," *Convolve*, 2011 WL 1766486, at *2, Apple has taken a maximalist view that it is entitled to reams of internal Meta documents simply because Meta distributes its apps via Apple's App Store and certain Meta products (like messaging apps) compete with Apple's.[4]

[4] Meta is not a competitor in DOJ's alleged product market for smartphones. As such, documents related to Meta's views of competition in other, unrelated markets are not relevant to Apple's defense.

Apple claims that it is entitled to all Meta documents arguably related to the 5 broad "pillars" of DOJ's complaint. But Apple has never explained why it needs this information from Meta, or why Meta is best positioned to provide it. *In re Apple*, 2020 WL 5993223, at *6 (denying similar Apple motion to compel). Such expansive nonparty discovery, untethered to any specific claim or defense, is improper.

Apple's Custodial Searches are overbroad on their face: they seek "all" documents "relating to" or "concerning" or "reflecting" a number of broad and ill-defined topics far afield from the claims or defenses in the underlying litigation, including documents Apple can obtain itself. To give just a few examples of Apple's overreach, its Custodial Searches seek "all documents and communications": "relating to any efforts by" Meta to submit apps or "updates" to apps to "any App Marketplace" (RFP 9); "concerning" Meta's "decisions, policies, practices, or efforts to obtain access to or use or not use or enable or disable" any features, functionality, or APIs "concerning" Meta's messaging apps (RFP 18); "concerning differences and comparisons" between Meta's and Apple's products (RFP 20); and "reflecting consumer data, survey results, or complaints relating to user privacy, user and system security, exposure of users to objectionable content . . . or potential fraud" on Meta's apps (RFP 31).[5]

Apple's 54 Go-Get Searches fare no better. For example, Apple seeks: "download and use rates" for all of Meta's apps, including "*any*" "internal dashboards" and "analyses of MAU data" (RFP 7); "user complaints concerning the functionality or features" for all of Meta's Apps (RFP 8); "financial performance" for all of Meta's apps, broken out by app, marketplace, country, and time (RFP 17); "the strategy, consumer research, and consumer response" for "all advertising campaigns" about messaging (RFP 24); Meta's comparisons between its and Apple's approaches to app stores (RFP 37); and *Apple's* "past or present policies and practices" (RFP 43).

Courts have rejected motions to compel involving similarly broad requests for burdensome and sensitive nonparty discovery. In *In re Apple*, Apple moved to compel nonparty Samsung to produce documents in response to similar requests.[6] The court rejected as "fantastically overbroad" requests

---

*Audio MPEG, Inv. v. HP Inc.*, 2017 WL 950847, at *4 (N.D. Cal. Mar. 10, 2017) (nonparty's understanding of its relationship with party accused of monopolization is not relevant).

[5] Apple also seeks "[a]ll communications" between Meta and Apple (RFPs 6, 9); download rates for Meta's apps (RFP 7); and Apple's polices (RFP 43). Apple has that information in its own possession.

[6] The *In re Apple* court ordered Samsung to produce certain documents Samsung offered; the documents Meta has already produced (Part II.B) or offered to produce (Part II.C.5) here cover the same categories.

"concerning competition" for devices and app marketplaces and found Apple lacked a "substantial need" for the documents, reasoning "either competitor is equally capable" of analyzing issues like competition, consumer preferences, differences between apps and app stores, and how security and safety, and the use of personal information affect competition. 2020 WL 5993223, at *5, *8; *id.* at *8 ("forcing Samsung to . . . run search terms and have people review the documents is a much more laborious way to obtain this type of information than" from public sources or Apple's own documents). Further, Samsung's "assessments" of these issues were not "critical to Apple's case." *Id.* at *6. The Court in *In re eBay* denied broad discovery into "online payment systems" where the alleged market at issue was the narrower "online auction market and the P2P online payment system market." 2009 WL 10677051, at *3. The Court explained that "assessment of the relevant markets for [the] antitrust case is an objective inquiry, not one that depends on [nonparty] views on the subject." *Id.* at *5. Here too, Meta's views on competition with Apple in a market different from the one alleged are not relevant.

**3. Apple's Search Protocol Is Untethered To The Issues In The Case, Crushingly Burdensome, And Disproportionate**

Not only are Apple's requests overly broad on their face, Apple's proposed search protocol for those requests is also overly broad, unduly burdensome, and disproportionate to the needs of the case and Meta's role as a third party. Nor does it resolve the issues with the RFPs addressed in Part II.C.2, *supra*. For the Custodial Searches alone, Apple seeks to impose a search protocol resulting in nearly 7 million hits. That search protocol—which utilizes 41 queries, across 22 custodians, and 11.5 years for 55 different requests—far exceeds the limits of what is appropriate for a nonparty in an antitrust case.

First, many search queries exceed the scope of the RFP to which they purport to correspond. For instance, Apple's queries for RFPs 6 and 19(e) are not limited to external communications even though both RFPs seek communications with third parties. Apple's queries are inconsistent with its RFPs in many other instances. *E.g.* RFP 23 (not limited to app marketplace review); RFP 48(c-e) (not limited to FTC trial testimony).

Next, many queries are untethered from the subject matter of the corresponding RFP. As one example, RFP 9(g) seeks documents "relating to any efforts by [Meta] to submit to any App Marketplace for Smartphones" Meta's apps, "including . . . marketing or other strategic plans." But

Apple's queries include no term reflecting the request for documents "relating to any efforts" by Meta to submit apps. Rather, Apple's query includes all documents related to Meta's marketing; advertising; growth, business, or strategic plans; and user data. Other RFPs purporting to request information about "privacy and/or security" on Meta's apps (*e.g.*, RFP 9 (e), 19 (d-f), 31, 32, 44), include searches for unrelated terms never mentioned in the subpoena, like "CSAM," "inappropriate," "explicit," or "spam."[7]

Still further, other queries use generic terms and overbroad proximity connectors, dramatically increasing hit counts with irrelevant documents. For example, the RFP 25 query requests documents in which "Instagram" or "IG" appear in the same paragraph as the word "feature"—*i.e.*, all mentions of Instagram features. RFPs 6 and 9(a-d) include any document mentioning "Instagram," "WhatsApp," or "text," that also contains "phone" or "review" *anywhere in the document.* RFP 48 includes any mention of Meta's CEO "Zuckerberg" within two sentences of words like "testimony" or "trial" or "Instagram" or "WhatsApp." Queries for RFPs 12, 13, 20, 21, 22, 37 would return any mention of "privacy" or "security" or "benefit" or "risk" or "safe" in the same paragraph as "phone" or "Instagram."[8]

Finally, Apple has not justified seeking 11.5 years of documents. *See Audio MPEG*, 2017 WL 950847, at *5 (Apple successfully quashing nonparty subpoena seeking 15 years' worth of discovery).

The cumulative burden of Apple's search protocol speaks for itself: Apple's proposal yields 6.8 million hits for the Custodial Searches across Meta's 18 proposed custodians alone, not counting the additional custodians Apple seeks to add.

The Go-Get Searches are separately unduly burdensome. Just the 12 (of the 54) "sufficient to show" requests for which Apple proposed search queries add another 2.4 million documents to the 6.8 million from the Custodial Searches. Paul Decl. ¶¶ 35-56. The Go-Get Searches cover almost every decision Meta has made or considered for each of its apps for a decade. Responding would require Meta to interview and collect documents from dozens of employees. *Id.* ¶ 43.

---

[7] Apple has not argued that child safety is a pro-competitive justification. Nor can it, as Apple does not even scan for child abuse material on iCloud. *See* ABC News, "Apple allowed child sexual abuse materials on iCloud for years," Feb. 19, 2026, https://tinyurl.com/3ndhzh55.

[8] RFP 11, and other search strings, contain the words "iPhone" or "iOS," which most emails sent on smartphones automatically include (*e.g.*, "sent from my iPhone" or "Outlook for iOS"). So, the RFP 11 search would return emails with or about government offices concerning *any* topic. And, RFP 53 would sweep in documents that contain "iPhone" or "iOS" within the same sentence as the phrase "open up."

For context, Apple, as the *defendant*, is reviewing 10 million documents to respond to DOJ's discovery. *Id.* ¶ 38. And, in the unsuccessful antitrust action against Meta, nonparty Apple produced just over 5,000 documents across 5 custodians while Snap and TikTok each produced just over 10,000 documents. *Id.* ¶¶ 50-53. In the current case, Meta has already produced 17,000 documents. Apple's request that Meta review 7 million more for the Custodial Searches alone is unreasonable.

Reviewing and producing these documents would be extraordinarily burdensome. For the Custodial Searches, Meta would need to employ and train contract reviewers to first-level review each document: at a rate of 1 million documents per month (what Apple achieved as the defendant) it would take Meta nearly seven months and cost millions to complete this review. *Id.* ¶¶ 40-44 (Apple's process requires 400 contract reviewers with "a lot of oversight" and "a lot of backend checks"). The Go-Get Searches will add over 2 months of time, and expense. *Id.* ¶ 42. Adding the CID Refresh on top will add to the cumulative burden. The time and cost to Meta to utilize Apple's search protocol is unduly burdensome and exceeds what the law requires of nonparties.

**4. The Court Should Deny Apple's Requests Due to Other Infirmities**

**a) Apple's Request Seeking Publicly Available Documents**

Apple's requests for publicly available documents (*e.g.*, RFPs 8, 22, 25, 26, 36, 43) should be denied because Apple has not justified why it needs this information from Meta. For example, RFP 8 seeks where Meta's apps are available and RFPs 20-22 seek comparisons between Meta's apps "when used on Apple's iOS versus when used on a non-Apple platform." Apple can find where Meta's apps are available and make such comparisons using publicly available information—Apple's App Store and Google's Play Store listings provide detailed feature descriptions, as does Meta's Help Center. Another court denied Apple's identical requests for documents about "the availability of apps or app marketplaces on [other] devices"; and "differences between the apps," because "Apple is equally able to expend its own resources to obtain [that] information." *In re Apple*, 2020 WL 5993223, at *5, *9.

Other examples include RFPs 25 and 26 ("availability . . . [of] encrypted messages" and if Meta provides unencrypted messages to third parties), 36 (Meta's App Marketplace policies, guidelines, pricing, and payment practices), and 43 (Meta's, Apple's, others' "policies or practices"). *See* Paul Ex. 4. RFPs 17 and 18 seek Meta's financial data, which is available in public securities filings. Meta

should not be forced to reproduce these. *See Intermarine, LLC v. Spliethoff Bevrachtingskantoor, B.V.*, 123 F. Supp. 3d 1215, 1218-19 (N.D. Cal. 2015) (quashing nonparty subpoena . . . where, in part, "in addition to the information already produced, Dropbox ha[d the documents] available on its website").

**b) Apple's Requests Relating to Privacy and Security**

Apple moves to compel information on what it refers to as privacy and security justifications for Apple's conduct (RFPs 9(e), 12, 13, 19, 20, 21, 31, 32, 44). But Apple has not explained why *Meta's* documents bear on *Apple's* privacy and security defenses. Apple instead claims (at 18-19) that because DOJ alleges "that Apple uses privacy [and] security . . . as a pretext[] . . . to justify its anticompetitive conduct" the privacy and security analyses of third party app developers are relevant to whether Apple's conduct is supported by legitimate procompetitive justifications. But the government's contention is that *Apple* uses privacy and security as a pretext to maintain its monopoly. Am. Compl., *U.S. v. Apple*, Dkt. 51, ¶ 142. Meta's internal documents cannot reveal the "true" reasons behind Apple's decisions.

Documents concerning Meta's privacy and security analyses contain highly confidential information and Apple must show a "substantial need" to compel their production. *In re Apple*, 2020 WL 5993223, at *3. Apple cannot make such a showing: Meta's privacy and security analyses do not bear on whether Apple possesses a monopoly over smartphones or used privacy and security to maintain that monopoly. Simply put, Apple had no knowledge of Meta's privacy and security analyses when it acted, so those documents could not have informed Apple's conduct. Meta's internal documents are therefore irrelevant to Apple's procompetitive justifications, and Apple has not shown a substantial need for them. *Id.* at *6 (denying Apple's "vastly overbroad" requests for documents about "consumer perceptions" relating to "security [and] privacy"; Apple could obtain "information about . . . consumer preferences" on its own).[9] Apple's own analyses of any privacy and security considerations that informed the actions that the government now challenges would be more probative. *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 658 (2d Cir. 2015) (plaintiff "rebutted Defendants' procompetitive justifications" with argument "[b]ased largely on Defendants' own documents").

[9] *In re Apple* found "Samsung's business practices that were unknown to Apple when it designed the policies at issue will almost by definition not be the core of Apple's defense," but ordered Samsung to produce a selection of its privacy and security guidelines for its own app store. 2020 WL 5993223, at *10. Meta's guidelines are available publicly and were already produced. *See* Parts II.B, C.4.a.

And, insofar as Apple seeks Meta's deliberations about *Apple's* conduct, that information is mere speculation from Meta about what Apple did and why. Indeed, Apple opposed a nearly identical discovery request from private plaintiffs in an antitrust case against Meta by making the same argument:

> Apple's deliberations (if any) about, or analysis of, Meta's conduct would be mere speculation about what Meta did and why. Consumers' request amounts to a fishing expedition for non-essential quotes showing a non-party taking an unflattering view of Meta's privacy practices. Apple's "views" are neither "important" nor necessary to Consumers' claims, and this request should be denied. *See In re Apple*, 2020 WL 5993223, at *6.

*Klein v. Meta Platforms, Inc.*, 3:20-cv-08570, Dkt. 415 at 3 (N.D. Cal. Jan. 16, 2023). The tides have turned, but the logic remains the same: Apple's request for nonparty Meta's views of Meta's and Apple's privacy practices is neither important nor necessary. *Audio MPEG*, 2017 WL 950847, at *4 (no authority for claim that "subjective motivations of a non-party to a litigation is relevant to establishing the antitrust liability of a party").[10] Apple has no "substantial need" for these documents, which seek information that is orthogonal to the case, and, as shown above, are highly burdensome to produce.

**c) Apple's Request Regarding Negative Press about Meta**

Apple claims (at 18-19) that RFP 32 also seeks "Meta's assessment of user privacy and system security for its apps." But the text of RFP 32 and the related search terms make clear that is not what Apple actually seeks (and if it did, it would fail for the reasons described in Part II.F.2). Really, this RFP seeks a swath of random information about unrelated, public Meta "scandals" intended only to harass, embarrass, and smear Meta. *See Leader Techs., Inc. v. Facebook, Inc.*, 2010 WL 761296, at *1 (N.D. Cal. Mar. 2, 2010) (nonparty "[d]iscovery is not unfettered" and may be limited against "annoyance, embarrassment, oppression"). Apple proffers no explanation as to why these documents are relevant or why the public information is insufficient.

For example, RFP 32(a) asks for information about a vague and inflammatory quote in a former Meta employee's supposed exposé on the company; the memoir has nothing to do with this case and serves no purpose other than smearing Meta. The other sub-parts further betray RFP 32's improper

---

[10] Apple's argument (at 18) that the government, as a purchaser of smartphones, was ordered to produce "privacy and security" analyses it undertook before deciding what device to purchase its employees is far afield from what Apple is asking Meta to produce. Apple is not asking for Meta's analysis of what devices to purchase employees.

purpose; they seek: negative press about Meta and a foreign company (32(b)); an issue DOJ omitted from its case entirely (32(c)); markets outside the case's geographic scope, including handing of user data in China (32(d)) and a German proceeding (32(e)); and unrelated lawsuits against Meta (32(f, g)). Discovery into random salacious topics to harass and embarrass a business partner or competitor is not a proper purpose of nonparty subpoenas. The Court should deny Apple's motion as to RFP 32.

**d) Apple's Requests About Meta's Political Activity**

Apple has requested discovery about the Coalition for a Competitive Mobile Experience ("Coalition") (RFP 53) and Meta's lobbying efforts (RFP 46). Both should be denied. It is disproportional to the needs of the case and requiring production would violate Meta's First Amendment rights. Another court in the district has already rejected Apple's attempt to compel nearly identical nonparty discovery about a similar coalition in other lawsuits on this basis; this Court should too.

The Coalition is a political advocacy group. RFP 53 seeks "all Documents and Communications" "concerning" six of the Coalition's public statements regarding the mobile app ecosystem, including "drafts." The Coalition's subjective opinions are irrelevant and do nothing to support or dispute DOJ's monopolization claim, as "[a]ntitrust law is not concerned with individual consumers or producers . . . it is concerned with market aggregates." *Epic Games, Inc. v. Apple Inc.*, 493 F. Supp. 3d 817, 839 (N.D. Cal. 2020). For this reason, when Apple sought similar documents as the defendant in three different antitrust actions alleging that Apple monopolizes the iOS app distribution market, the court denied the request as overboard, irrelevant, and unjustifiably infringing on the First Amendment. *See Apple Inc. v. Match Grp., Inc.*, 2021 WL 3727067, at *8-9 (N.D. Cal. Aug. 19, 2021). Here, too, there can be little doubt why Apple really wants these documents: "Apple is trying to use discovery to learn what its [business counterparts] have been up to." *Id.* at *4. And, just as in *Match*, "draft public statements by [a] [c]oalition, emails among [c]oalition members about what the [c]oalition's website should say, or brainstorming emails about public relations strategies" are not "relevant." *Id.* at *3. For the same reason, RFP 46, seeking documents about Meta's lobbying efforts, should be denied.

RFPs 46 and 53 should further be denied because, contrary to Apple's claim (at 20), the requests do "probe Meta's political or associational activities." Apple repackaging the RFPs as an effort to

"understand" Meta's public claims (while engaging in protected First Amendment activity) does not change the calculus. *See Match*, 2021 WL 3727067, at *8. Meta has made a "prima facie showing of arguable first amendment infringement:" The RFPs "infringe [Meta's] First Amendment rights" because the "[c]oalition is a public advocacy organization," and "[t]urning over the [c]oalition's internal communications to Apple—its public policy opponent—would chill any further participation in the organization." *Id.* at *7-8. The "evidentiary burden" thus "shifts to" Apple—which has not shown that "the information sought . . . is rationally related to a compelling government interest and is the least restrictive means of obtaining the desired information." *Id.* at *7. Apple has not even met the Rules 26 and 45 discovery requirements, *see* Parts II.C.1-3; it certainly has not satisfied this heightened standard.

**e) Apple's Request For Meta's Communications About The Litigation**

Apple also moves to compel Meta to produce all interactions with any government agency or plaintiff in DOJ's lawsuit or any of the coordinated private class actions. *See* RFP 11. Apple has never explained why it needs this information or why *Meta* must provide this information. Meta's communications with the government or private plaintiffs in this case are easily obtainable from those parties. "In its undue burden inquiry, the Court properly may evaluate whether information requested through a nonparty subpoena is readily available from a party." *Last v. M-I*, 2022 WL 3012206, at *2 (C.D. Cal. May 19, 2022). Meta should not bear the burden of producing these documents.

Apple's RFP 11 search query faces other problems, too. *E.g.*, Part II.C.3. Among other things, it reaches beyond the text of the RFP to sweep in any communication that contain (1) the terms "US attorney," "FTC," "feds," "CID," or last names found in the general population, (2) within 50 words terms like "Apple," "iPhone," "iOS," "iMessage," or "SMS," many of which (such as "SMS") are not specific to Apple. The query, in other words, is not limited to documents concerning Meta's interactions with the government—it is engineered to sweep in Meta's internal deliberative documents mentioning law enforcement offices. This request and the search terms exceed what the law requires of nonparties.

**5. Apple's Request For A CID Refresh Should Be Considered Part of The Cumulative Burden of The Subpoena**

Apple's request for a CID Refresh is subject to the same undue burden analysis as the other requests. The Court should not order it in addition to Apple's other requests. As Meta repeatedly

explained to Apple, the burden on Meta of responding to the subpoena is properly assessed as a whole. As evidenced by Apple's search protocol, the cumulative burden of refreshing the CID on top of responding to Apple's 110 requests is unreasonable. Nonparty discovery should not require reviewing millions of documents hitting on overbroad searches or the burdensome sufficient-to-show requests.

While Apple's motion should be denied, and the subpoena should be quashed in its entirety, assuming Meta is required to engage in some additional discovery in this case, the Court should adopt Meta's counteroffer: (1) a "refresh" of the CID production up to the date of the complaint filing, with two modifications;[11] and (2) documents Meta is producing to the plaintiffs in a parallel action against Apple. Paul Decl. ¶¶ 46-49. Meta's counteroffer provides Apple the information it supposedly needs about each of the complaint's "pillars," without unduly burdening Meta. As explained above, the CID requests map onto Apple's RFPs. To the extent the Court agrees with Apple that it needs more recent documents from Meta after the CID production in 2022, Meta's counteroffer provides that.[12] And Meta is in the process of reviewing for production in the related case documents covering Meta's smartwatch development efforts, limitations imposed by Apple, and issues with connectivity between Apple and third-party smartwatches, which satisfy Apple's requests for documents concerning smartwatch issues.

## III. META IS ENTITLED TO COSTS OF COMPLIANCE

Meta further requests an order from the Court confirming that, if Meta must provide any discovery in response to the subpoena, Apple must pay Meta's costs of compliance. The law in this Circuit on cost-shifting for nonparty subpoenas is unequivocal: "Rule 45(d)(2)(B)(ii) *requires* the district court to shift a non-party's costs of compliance with a subpoena, if those costs are significant." *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013) (emphasis added).

Apple does not dispute this presumption, arguing only (at 12 n.12) that Meta is an "interested" nonparty. It is not, however, and Apple's cases show why. *Shasta Linen Supply, Inc. v. Applied Underwriters, Inc.*, 2018 WL 2981827, at *5 (E.D. Cal. June 14, 2018), involved an insurance broker

[11] Those modifications: (1) Remove the search string related to ATT. The CID production includes documents on ATT, but since DOJ declined to bring a case relating to ATT, a refresh is not necessary. (2) Removing the word "report*" from one of the search strings, which resulted in 16,688 hits. Other terms in the search would surface reports from Meta's competitive intelligence team. Paul Dec. ¶ 47.

[12] The date of the complaint should be the cutoff date; searches after that will sweep in things like press clips about the case that are non-responsive and needlessly burdensome to review.

whose "business relationship with the parties" and "operat[ion] as plaintiffs' agent" rendered fee-shifting inappropriate. *Valcor Eng'g Corp. v. Parker Hannifin Corp.*, 2018 WL 3956732, at *6 (C.D. Cal. July 12, 2018), concerned a nonparty that was closely involved in the "design and/or testing of one of the main . . . parts at issue in [the] lawsuit"; had a common interest agreement with the plaintiff; and had a "financial interest in the outcome of th[e] lawsuit." Here, Meta has no business relationship or common interest agreement with a party to Apple's case, nor was it involved in Apple's conduct that led to the litigation. Meta is a true nonparty; this Circuit's default cost-shifting procedure applies.[13]

## IV. THE COURT SHOULD DENY APPLE'S MOTION TO TRANSFER

The Court should deny Apple's request (at 24) to transfer this motion to the District of New Jersey. Meta does not consent to the transfer, so Apple must establish "exceptional circumstances" to force Meta to litigate across the country. Fed. R. Civ. P. 45(f). It has not done so.

Apple mentions exceptional circumstances without explaining how they apply to Apple's specific discovery requests to Meta. For example, Apple states that transfer will avoid duplicative review, but does not identify any subpoena issue that is duplicative of issues already decided in New Jersey. None exists. Apple's demands turn on Meta-specific issues, such as whether certain high-level Meta executives are appropriate custodians and whether Meta already produced documents "sufficient-to-show" certain information. The New Jersey Court has no preexisting "familiarity" with these issues. A case Apple claims supports its argument is illustrative—the court granted transfer under the "exceptional circumstance" that the *specific* documents sought were already under *in camera* review in another district. *See Moon Mountain Farms, LLC v. Rural Cmty. Ins. Co.*, 301 F.R.D. 426, 429-30 (N.D. Cal. 2014). No such duplication exists here. Apple's contention (at 24) that transfer will "ensure consistency" is similarly unsubstantiated. Because there will not be duplicative review of the issues in this dispute between Apple and Meta, there are no corresponding New Jersey rulings this dispute's resolution need be "[ ]consistent" with. *See Personalized Media Commc'ns, LLC v. Top Victory Elecs. (Taiwan) Co.*, 2016 WL 8542561, at *2 (N.D. Cal. Aug. 3, 2016). Indeed, the most similar prior ruling, denying Apple discovery of Coalition documents, came from this district (*see* Part II.C.4.d).

[13] Any costs of compliance with Apple's subpoena would be "significant" given the extreme breadth of Apple's subpoena, which Apple does not deny. *Legal Voice*, 738 F.3d at 1185 ("The Ninth Circuit had no trouble concluding that $20,000 is significant."); *see also* Paul Decl. ¶ 44.

Apple contends (at 24-25) that transfer will promote judicial efficiency, and points to the New Jersey Court's familiarity with the case and the technology at issue. It is always the case that the court overseeing the underlying action has more familiarity with the case, but if that were sufficient to warrant transfer, it would apply to every motion to compel and Rule 45's "exceptional circumstances" standard would lack any meaning. *See Personalized Media*, 2016 WL 8542561, at *2. Moreover, even if the District of New Jersey has more *general* familiarity with the case, "it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions." Fed. R. Civ. P. 45(f) advisory comm. notes to 2013 amend. Apple provides no reason why this Court would have trouble understanding the technology at issue, or why details of the technology are relevant to the subpoena.

Instead, "'[t]he prime concern' in deciding Rule 45(f) transfer motions 'should be avoiding burdens on local nonparties subject to subpoenas.'" *Music Grp. Macao Com. Offshore Ltd. v. Does*, 82 F. Supp. 3d 979, 984 (N.D. Cal. 2015). Meta *and Apple* are local to the Northern District of California, where Apple has previously litigated (and lost) multiple motions to compel.[14] Apple's real motive in seeking to transfer the dispute appears to be improper forum-shopping because it is willing to even inconvenience *itself* to receive a forum it believes will be more favorable.

Moreover, Apple's preferred forum is not the District of New Jersey at all. As Apple reveals (at 25), the court has "appoint[ed] three Special Masters to assist with the 'increasing number of discovery and other anticipated disputes.'" It is not appropriate for this Court to transfer this dispute to a court likely to further divert the matter to Special Masters Meta does not consent to litigate in front of and where the parties litigating in front of a Special Master then split the costs. The Northern District of California—both Meta and Apple's home—is best situated to resolve this dispute.

**CONCLUSION**

For the foregoing reasons, Meta's motion to quash should be granted and Apple's motion to transfer and motion to compel should be denied.

[14] *See*, *e.g.*, *Match*, 2021 WL 3727067, at *8-9; *In re Apple*, 2020 WL 5993223, at *7.

DATED: September 15, 2026

Respectfully submitted,

*/s/ Ana N. Paul*

**KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.**
Ana N. Paul (*pro hac vice*)
Hannah D.C. DePalo (*pro hac vice*)
Stephanie E. Levin (*pro hac vice*)
Natalie E. Giotta (*pro hac vice*)
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Telephone: (202) 326-7900
Facsimile: (202) 326-7999
E-mail: apaul@kellogghansen.com
hdepalo@kellogghansen.com
slevin@kellogghansen.com
ngiotta@kellogghansen.com

**SULLIVAN & CROMWELL LLP**
Renata B. Hesse (SBN 148425)
550 Hamilton Avenue
Palo Alto, CA 94301-2010
Telephone: (650) 461-5600
Facsimile: (650) 461-5700
E-mail: hesser@sullcrom.com

Shane M. Palmer (SBN 308033)
125 Broad Street
New York, NY 10004-2498
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: palmersh@sullcrom.com

*Counsel for Respondent Meta Platforms, Inc.*